# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-03-00765-CV
NO. 03-04-00026-CV

**Public Utility Commission of Texas and WWC Texas RSA Limited Partnership, Appellants**

**v.**

**Texas Telephone Association and Texas Statewide Telephone Cooperative, Inc., Appellees**

**FROM THE DISTRICT COURTS OF TRAVIS COUNTY, 201ST & 261ST JUDICIAL DISTRICT NOS. GN1-00035 & GN1-02552, HONORABLE PAUL DAVIS, JUDGE PRESIDING**

## O P I N I O N

This case concerns the application by Western Wireless Corporation Texas RSA Limited Partnership ("Western Wireless") for state and federal subsidies. Western Wireless sought designation as an eligible telecommunications provider and carrier by the Public Utility Commission ("the Commission") in order to be eligible to receive subsidies from both federal and state universal service funds. Texas Telephone Association and Texas Statewide Telephone Cooperative, Inc. (collectively "Texas Telephone") filed motions to intervene to object to Western Wireless receiving the subsidies. The Commission granted Western Wireless's application. In addition, the Commission found that Western Wireless's description of its basic telecommunications service and the tariff rate that it would charge for the service complied with the Commission's requirements. Texas Telephone appealed both of these decisions of the Commission, and the district court reversed.

Western Wireless and the Commission appeal to this court. We will reverse the judgment of the district court and render judgment affirming the order of the Commission.

## STATUTORY FRAMEWORK

One of the goals of the Federal Communications Commission ("FCC") is to ensure that all Americans have access to affordable phone service. *See Alenco Communications, Inc. v. FCC*, 201 F.3d 608, 614-15 (5th Cir. 2000). As a way of reaching this goal, the Universal Service Mandate provides that access to telephone service be provided to low-income consumers and those in rural, higher-cost areas. 47 U.S.C.A. § 254(b)(2)-(5) (West 2001). To effectuate this mandate, the FCC and state regulatory agencies have, in the past, provided subsidies to companies providing phone service to customers in rural areas and low-income customers. *See In re Federal-State Joint Bd. on Universal Serv.,* Report and Order, CC Docket No. 96-45, 12 FCC Rcd. 8776, ¶ 10 & n.15 (rel. May 8, 1997) ("*Universal Service Order*").

In 1996, Congress amended the Communications Act of 1934. Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (codified in various sections of titles 15 and 47 of the United States Code) ("Federal Telecommunications Act"). The purpose of the amendment was to promote competition to secure lower prices and to provide better services for consumers. *Id.* By requiring local carriers to share their networks with competitors, the goals of competition and market entry would be enhanced. *See AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 371 (1999); *see generally* 47 U.S.C.A. §§ 251-53 (West 2001 & Supp. 2004). Congress directed that state and federal programs be adopted to advance universal service. 47 U.S.C.A. § 254(b)(5).

2

As a result, Texas and the federal government have established universal service funds to award subsidies to companies providing service to low income and rural, high-cost areas. *See* 47 U.S.C.A. § 254(e)-(f) (West 2001); Tex. Util. Code Ann. §§ 56.001-56.026 (West 2002 & Supp. 2004-05). The subsidies are available only to carriers meeting the requirements established by the Public Utility Regulatory Act ("PURA") (Tex. Util. Code Ann. §§ 11.001-64.158 (West 1998 & Supp. 2004-05)), the Federal Telecommunications Act, and rules issued by the Commission and the FCC. In order to be eligible to receive these state and federal subsidies, an applicant must be designated as an "eligible telecommunications provider or carrier." 47 U.S.C.A. § 214(e)(1) (West 2001); 16 Tex. Admin. Code § 26.417(a) (2004). Although the Commission can designate more than one eligible carrier or provider in a given area, in rural areas the Commission can only designate more than one carrier or provider if the Commission finds multiple designations to be in the "public interest." 47 U.S.C.A. § 214(e)(2) (West 2001); 16 Tex. Admin. Code §§ 26.417(d), .418(e) (2004). When carriers receive these subsidies, they are required to provide basic telecommunications services to all customers within the rural areas they serve and to low-income consumers who cannot obtain service with other carriers. Tex. Util. Code Ann. § 54.251(a)(2), (b) (West Supp. 2004-05).

## THE CONTROVERSY

Western Wireless is a telecommunications carrier that provides commercial mobile radio service ("CMRS") to 107 counties in Texas.[1] The services Western Wireless provides to its

----

[1] The definition of commercial mobile service reads, in relevant part, as follows:

[A]ny mobile service (as defined in section 153 of this title) that is provided for profit and makes interconnected service available (A) to the public or (B) to such

customers include but are not limited to the following: (1) the ability to make and receive phone calls within a specific bandwidth by use of arrangements with local telephone companies; (2) certain amounts of free local use of phone services; (3) an equivalent of dual-tone, multi-frequency signaling; (4) single-party service where one subscriber, not multiple parties, is served through an access line; (5) access to emergency services; (6) access to operator services; (7) access to interexchange services, which gives customers the ability to make and receive interexchange or toll calls; (8) access to directory assistance; (9) toll blocking services that allow customers to block the completion of outgoing toll calls; and (10) mobile cellular service.

In March 2000, Western Wireless filed applications with the Commission to become an eligible provider and an eligible carrier in order to receive subsidies from the state and federal

---

classes of eligible users as to be effectively available to a substantial portion of the public, as specified by regulation by the Commission

47 U.S.C.A. § 332(d)(1) (West 2001).

The definition of mobile service reads, in relevant part, as follows:

[A] radio communication service carried on between mobile stations or receivers and land stations, and by mobile stations communicating among themselves, and includes (A) both one-way and two-way radio communication services, (B) a mobile service which provides a regularly interacting group of base, mobile, portable, and associated control and relay stations (whether licensed on an individual, cooperative, or multiple basis) for private one-way or two-way land mobile radio communications by eligible users over designated areas of operation, and (C) any service for which a license is required in a personal communications service established pursuant to the proceeding entitled "Amendment to the Commission's Rules to Establish New Personal Communications Services" (GEN Docket No. 90-314; ET Docket No. 92-100), or any successor proceeding.

47 U.S.C.A. § 153(27) (West 2001).

4

universal service funds for providing basic local telecommunication services. Western Wireless requested these designations in areas that already had incumbent service providers. In its application, Western Wireless requested designations in the "study areas"[2] of fourteen rural-incumbent carriers of which Texas Telephone is one.

One of the other rural incumbent carriers is the Southwest Arkansas Telephone Cooperative, Inc. ("Southwest"). Southwest's study area includes seven local exchanges in Arkansas and one in Texas. Western Wireless applied for eligible carrier status only in the Texas portion of Southwest's study area.

The Commission issued notice of Western Wireless's applications to be considered an eligible telecommunications provider and carrier and set up a separate "designation docket." Texas Telephone filed motions to intervene. Texas Telephone is an eligible telecommunications provider and carrier in areas where Western Wireless is seeking to be granted eligibility. The Commission then referred the applications to the State Office of Administrative Hearings.

As a preliminary matter, Texas Telephone insisted that Western Wireless was required to obtain a certificate of convenience and necessity, a certificate of operating authority, or a service provider certificate of operating authority (we will refer to each of these as a "CCN") before receiving a designation as an eligible provider. The Commission rejected this argument and initially determined that Western Wireless was not required to be certificated in order to be an eligible provider.

---

[2] A "study area" is the term used to describe the geographical area a rural telephone company serves. 47 U.S.C.A. § 214(e)(5) (West 2001). For rural telephone companies, a study area is the same as a service area. *Id*.

At the hearing before the administrative law judge, Texas Telephone contended that, in addition to the CCN requirement, Western Wireless's application should be denied for the following two reasons: (1) Western Wireless's application would not be in the public interest and (2) Western Wireless did not apply to all of the local exchanges in the Southwest study area. The administrative law judge submitted a proposal for decision to the Commission and recommended Western Wireless's applications be granted.

The Commission adopted the proposal for decision. The Commission concluded that the designation of Western Wireless as an eligible provider and carrier was in the public interest. The Commission refused to condition Western Wireless's carrier designation on obtaining a similar designation in Arkansas.

In its Designation Order, the Commission also established the need for a separate "compliance docket." Under existing Commission rules, to be eligible for universal service funding, an applicant must charge rates that did not exceed 150% of the incumbent carrier's existing rate for basic local telecommunications services. 16 Tex. Admin. Code § 26.417(c)(1)(B) (2004). Initially, in the Designation Order, the Commission found that Western Wireless's proposed rate of $14.99 did not appear to meet the 150% requirement. Therefore, the Designation Order required, in a separate compliance docket, that Western Wireless file a tariff with proposed rates that were no higher than 150% of the incumbents' existing rates and required Western Wireless to provide a description of the content, pricing, terms, and conditions of Western Wireless's universal offering to determine whether the service complied with the Commission's requirements.

During the compliance proceeding, Western Wireless filed a proposed tariff and two additional amended tariffs with the Commission. In response, Texas Telephone filed a list of concerns for the Commission to consider when deciding whether to approve Western Wireless for subsidies. Texas Telephone asserted that Western Wireless's proposed rate of $14.99 in its second amended tariff did not meet the 150% requirement.

In the interim period between the Designation Order and the compliance proceeding, the Commission enacted a new rule. *See* Tex. Admin. Code § 26.25(e)(8) (2002), *repealed by* 27 Tex. Reg. 9568 (2002). The rule required providers to list all of the fees and surcharges in the amount charged for providing basic local service in order to allow consumers to compare the services and rates charged by various providers. In March 2001, after the rule had become effective, the Commission issued a "notice of approval" approving Western Wireless's tariff compliance filing. In making this determination, the Commission specified that its approval was based, in part, on application of the new rule. Texas Telephone filed exceptions to the notice of approval and challenged the conclusion that Western Wireless's tariff satisfied the 150% requirement.

The Commission issued notice that it would consider the exceptions filed by Texas Telephone in an open meeting and gave notice of the meeting to all parties including Texas Telephone. Both Texas Telephone's and Western Wireless's counsel attended the open meeting. At the meeting, Western Wireless contended that, after including all the charges listed in the new rule for comparison to the incumbent's rate, its $14.99 rate complied with the 150% requirement.

After considering Texas Telephone's exceptions, the Commission issued its Compliance Order and approved Western Wireless's tariff compliance filing, which included the

7

basic service rate of $14.99. The Commission noted that its decision was based, in part, on the newly enacted Rule 26.25(e)(8).

Texas Telephone filed a motion for rehearing of the Compliance Order on May 29, 2001, contending there were procedural flaws in the Commission's action and contending Western Wireless's final compliance filing failed to meet the requirements of the Commission's Designation Order and rules. During the Commission's open meeting on June 14, 2001, the Commissioners orally extended the time to act upon the motion for rehearing until July 16, 2001. However, the written order extending the Commission's time to act was not reduced to writing and signed until August 2, 2001.

## DISTRICT COURT'S JUDICIAL REVIEW

Texas Telephone appealed the Designation Order granting Western Wireless the status of an eligible provider and carrier. Western Wireless intervened in support of the Commission. The district court concluded that the Commission had committed the following three errors in deciding its Designation Order: (1) the Commission should have required Western Wireless to be certified before granting Western Wireless an eligible provider designation; (2) the Commission applied an incorrect legal standard when it considered whether designating Western Wireless as an eligible carrier and provider was in the public interest; and (3) the Commission should not have granted Western Wireless's designation in only the single exchange of the Southwest study area that was in Texas.

Texas Telephone also appealed the Commission's Compliance Order and filed a petition seeking administrative review. *See* Tex. Util. Code Ann. § 15.001 (West 1998). Texas

8

Telephone alleged that the Compliance Order impermissibly attempted to modify a finding of fact in the Designation Order,[3] that the attempt to modify the finding was not supported by substantial evidence, and that the Commission had deprived Texas Telephone of due process.

In response, Western Wireless filed a plea to the jurisdiction contending that the district court did not have jurisdiction because the appeal was not filed within 30 days as required by the Administrative Procedure Act. *See* Tex. Gov't Code Ann. § 2001.176 (West 2000). Western Wireless also urged that because the compliance proceeding was not a contested-case proceeding, Texas Telephone had no right to file an appeal.

Texas Telephone then amended its petition for judicial review seeking relief under the Uniform Declaratory Judgment Act ("UDJA"). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 1997). Texas Telephone asked the trial court to declare the Compliance Order void for the following reasons: (1) the Commission had exceeded its statutory authority by changing a finding of fact in a final order that was on appeal and (2) the Commission deprived Texas Telephone of procedural due process by entering findings of fact and conclusions of law without giving Texas Telephone the right to notice and a hearing as required in a contested case. *See* Tex. Gov't Code Ann. § 2001.081 (West 2000). Western Wireless amended its plea to the jurisdiction seeking dismissal of Texas Telephone's declaratory-judgment action.

The district court consolidated the Designation Order and the Compliance Order appeals. The district court denied Western Wireless's plea to the jurisdiction and reversed and

---

[3] Finding of Fact number 44 in the Designation Order had preliminarily determined that Western Wireless's $14.99 base rate did not comply with the 150% requirement in the Commission's rules.

remanded both of the Commission's orders. The district court granted Texas Telephone's request for declaratory relief by holding that the Compliance Order was void. Western Wireless and the Commission appeal these decisions of the district court.

## DISCUSSION

Western Wireless and the Commission contend, on appeal, that the district court erred in reversing both the Designation Order and the Compliance Order. Regarding the Designation Order, Western Wireless asserts that it was not necessary for it to obtain a certificate in order to provide local service and asserts that the public interest was served by granting its designation requests. Further, Western Wireless urges that it need not seek eligibility designations in another state before being approved to receive universal fund subsidies in Texas. Regarding the Compliance Order, Western Wireless contends that the district court erred by granting Texas Telephone's declaratory-judgment action, that Texas Telephone's petition for judicial review was not timely filed, that the Commission correctly determined that the $14.99 rate complied with all relevant requirements, and that the Commission did not deprive Texas Telephone of due process.

### Designation Order

*Certificate Requirement*

The Commission granted Western Wireless's application for state universal service funding without requiring Western Wireless to obtain a CCN. The district court concluded that this decision was in error. Section 54.001 of PURA generally requires a person to obtain a CCN in order to provide basic local telecommunication services. Tex. Util. Code Ann. § 54.001 (West 1998).

10

However, section 51.003 of PURA exempts a provider of CMRS from the provisions of PURA except where otherwise *expressly* provided by statute. *Id.* § 51.003 (West 1998) (emphasis added).

The Commission, in its Designation Order, found that Western Wireless is a CMRS provider that provides services primarily in rural areas of the United States. Further, the Commission concluded that Western Wireless is exempt from the requirements of PURA because Western Wireless is a CMRS provider. *See id.* § 51.003(5).

Texas Telephone asserts that the district court correctly decided that the Commission had erred by not requiring Western Wireless to obtain a CCN. Texas Telephone contends that the exemption for CMRS providers does not apply to the certification requirement because PURA *expressly* provides otherwise. Section 54.001 of PURA applies to *persons* wanting to provide telephone service, and section 11.003 (14) of PURA defines a *person* as including a corporation. *See id.* §§ 54.001, 11.003 (14) (West Supp. 2004-05). From this, Texas Telephone surmises that because Western Wireless is a *corporation*, the term *person* includes Western Wireless. Consequently, Texas Telephone insists Western Wireless must obtain a CCN before providing basic local telecommunications services. Further, Texas Telephone asserts that because section 11.003(14) of PURA specifically excludes electric cooperatives from the definition of person but does not exclude CMRS providers from the definition, then the principle of *expressio unius est exclusio alterius* implies that CMRS providers are included in the definition of a *person* and are, therefore, required to obtain a CCN in order to provide basic local telecommunication service. *See Dallas Merchant's & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 493 n.7 (Tex. 1993).

We disagree with Texas Telephone's position. The Commission determined that Western Wireless is a CMRS provider.[4] Section 51.003 of PURA specifically excludes providers of CMRS from the provisions of PURA unless otherwise *expressly provided*. Tex. Util. Code Ann. § 51.003. CMRS providers are not expressly included in the sections of PURA delineating the CCN requirements. *See id.* §§ 54.001-.003 (West 1998). On the contrary, in section 54.003, PURA again specifically exempts telecommunications utilities from the CCN requirement in order to provide CMRS. *Id.* § 54.003. Because the district court erroneously concluded that the Commission erred by not requiring Western Wireless to obtain a CCN to provide basic service, we reverse the decision of the district court.

*Public Interest*

The district court also concluded that the Commission applied an incorrect standard when determining whether granting Western Wireless's application for universal service funding was in the "public interest." For rural areas served by a rural telephone company, the Commission may designate an additional carrier under federal law or an additional provider under state law if the Commission finds that the designation is in the public interest. *See* 47 U.S.C.A. § 214(e)(2); 47 C.F.R. § 54.201(c) (2003); 16 Tex. Admin. Code §§ 26.417(d)(2), .418(e)(2) (2004). Although a "public interest" determination is not necessary for a competing company to provide service in an area already served by an incumbent telecommunications service provider, a "public interest" finding

---

[4] It is worth noting that Texas Telephone does not contest Western Wireless's classification as a CMRS provider. They only dispute what effect that classification has on the requirement to obtain a CCN.

is necessary to receive subsidies from the state and federal universal service funds. In other words, the Commission determines whether a provider has satisfied all the requirements necessary to receive the state and federal subsidies but does not determine whether a company may, on its own and without government financial support, decide to compete in an area already served by an incumbent telecommunications provider.

None of the statutes requiring a public interest analysis specify what factors are required to be considered for the public interest requirement to be satisfied. However, public interest determinations often involve consideration of how the action will impact consumers. *See*, *e.g.*, *Federal Power Comm'n v. Texaco, Inc.*, 417 U.S. 380, 392 (1974) (protecting consumers from high rates serves public interest); *Continental Oil Co. v. Federal Power Comm'n*, 378 F.2d 510, 532 (5th Cir. 1967) (public interest has strong emphasis on consumer interest). Further, section 11.002 of PURA states that the Act was enacted to protect the public interest inherent in the service of public utilities and that the purpose of the title is to establish a system to assure rates that are just and reasonable to consumers and utilities. Tex. Util. Code Ann. § 11.002 (West Supp. 2004-05).

Public interest determinations also involve considering how actions will affect competition. *See, e.g.*, *Otter Tail Power Co. v. United States*, 410 U.S. 366, 374 (1973) (policy of Federal Power Act to maintain competition to maximum extent possible consistent with public interest); Tex. Util. Code Ann. § 51.001 (West Supp. 2004-05) (to encourage development of competitive telecommunications environment, new rules must be formulated to protect public interest). Competition is generally presumed to be in the public interest and not contrary to it. *American Transfer & Storage Co. v. Interstate Commerce Comm'n*, 719 F.2d 1283, 1300 (5th Cir.

1983).  Further, the Federal Telecommunications Act was amended to promote competition among telecommunication providers to obtain lower prices and better services for consumers.

Public interest determinations are dependent upon the special knowledge and expertise of the Commission.  *See Amtel Communications, Inc. v. Public Util. Comm'n*, 687 S.W.2d 95, 99 (Tex. App.—Austin 1985, no pet.).  It is the Commission's task to assess competing policies and determine what is in the public interest.  *Id.*  The legislature intended the Commission to make whatever accommodations and adjustments necessary when determining what is in the public interest.  *See id.* at 101.  In balancing these considerations, the agency is required to exercise its expertise to further the overall public interest.  *See Public Util. Comm'n v. Texland Elec. Co.*, 701 S.W.2d 261, 266 (Tex. App.—Austin 1985, writ ref'd n.r.e.).

It is within the Commission's authority to decide what public interest means in a particular case.  *See Hammack v. Public Util. Comm'n*, 131 S.W.3d 713, 723 (Tex. App.—Austin 2004, pet. filed) (Commission may decide what statutory standard of "need" means in specific situations).  The Commission has wide discretion in determining what factors to consider when deciding whether something serves the public interest.  *See El Paso Elec. Co. v. Public Util. Comm'n*, 917 S.W.2d 846, 856 (Tex. App.—Austin 1995), *judgm't withdrawn and cause dism'd by agr.*, 917 S.W.2d 872 (Tex. App.—Austin 1996) (Commission given wide discretion to determine what property is "useful" under statute).  Because administrative agencies are given their statutory powers with a view to achieving legislative purposes more fully and efficiently through the agency's specialized judgment, knowledge, and expertise, the methods chosen by the agency and its interpretation of the statute it is required to administer are entitled to due respect.  *Hammack*, 131

14

S.W.3d at 723; *cf. Federal Communications Comm'n v. WNCN Listeners Guild*, 450 U.S. 582, 596 (1981) (Interstate Commerce Commission's determination of how public interest is best served is entitled to substantial judicial deference).

Texas Telephone asserts that the Commission misconstrued the public interest standard.[5] Specifically, Texas Telephone alleges that the public interest analysis must include an

---

[5] Texas Telephone also contends that the Commission misconstrued the burden of proof for eligibility designations. Texas Telephone asserts that the burden of proof in a public interest determination is on the applicant and asserts that the incumbent is not required to show that the market will be harmed if the designation is granted. *Federal-State Joint Bd. on Universal Service, Virginia Cellular, LLC Petition for Designation as an Eligible Telecommunications Carrier in the Commonwealth of Virginia,* Memorandum Opinion and Order, CC Docket No. 96-45, 19 FCC Rcd 1563, 1574-75, ¶ 26 (rel. Jan. 22, 2004); *Federal-State Joint Bd. on Universal Service, In re Highland Cellular, Inc. Petition for Designation as an Eligible Telecommunications Carrier in the Commonwealth of Virginia*, Memorandum Opinion and Order, CC Docket No. 96-45, 19 FCC Rcd 6422, 6431, ¶ 20 (rel. April 24, 2004); *Federal-State Joint Bd. on Universal Service, Advantage Cellular, Inc. Petition for Designation as an Eligible Telecommunications Carrier in the State of Tennessee,* Order, CC Docket No. 96-45, 19 FCC Rcd 20985, 20991, ¶ 16 (rel. Oct. 22, 2004). Texas Telephone urges that Finding of Fact 74, which stated that the evidence did "not prove that any affected area" was "unable to support more than one" carrier, reveals that the Commission incorrectly required the incumbents to prove that the additional designation was not in the public interest rather than requiring Western Wireless to prove that its designation was in the public interest. Texas Telephone asserts that by placing the burden of proof on Texas Telephone, the Commission prejudiced the incumbents' substantial rights, which is a clear error of law requiring a reversal of the Commission's decision. *See Texas Dep't of Transp. v. Jones Bros. Dirt & Paving Contractors*, 24 S.W.3d 893, 898 (Tex. App.—Austin 2000), *rev'd on other grounds*, 92 S.W.3d 477 (Tex. 2002) ("court may reverse an agency determination only if substantial rights of appellant have been prejudiced").

However, because Texas Telephone did not raise the burden argument in their motion for rehearing before the Commission or in their petition for judicial review in the district court, they have failed to preserve the argument. *Brown v. Texas Dep't of Ins.*, 31 S.W.3d 683, 687 (Tex. App.—Austin 2000, no pet.); *see also Carrizales v. Texas Dep't of Protective and Regulatory Servs.*, 5 S.W.3d 922, 925 (Tex. App.—Austin 1999, pet. denied) (party may not raise an issue for first time on appeal). Further, even if the claim were not waived, there is no indication that the Commission improperly reversed the burden of proof. Rather, Finding of Fact 74 indicates that the Commission rejected Texas Telephone's assertions of harm to the incumbent but does not indicate that the burden of proof had been changed.

15

analysis of the impact of an additional carrier on the incumbent rural carrier because, they argue, the addition of a second carrier might adversely impact existing services in rural areas and, therefore, customers in rural areas might be negatively impacted. As proof of their assertion that the Commission applied an incorrect standard, Texas Telephone cites to Findings of Fact 71 to 73 in the Designation Order in which the Commission concluded that prohibiting Western Wireless's ability to provide telecommunications service because of the effect on incumbent providers would be contrary to the universal service goals of the Federal Communications Act.[6]

In further support of their assertion that a public interest analysis must involve consideration of the impact on incumbent carriers, Texas Telephone points to three orders issued by the FCC in which the FCC granted three companies eligible carrier statuses in certain portions of the incumbent carriers' study areas. *See Federal-State Joint Bd. on Universal Service, Virginia Cellular, LLC Petition for Designation as an Eligible Telecommunications Carrier in the Commonwealth of Virginia,* Memorandum Opinion and Order, CC Docket No. 96-45, 19 FCC Rcd 1563 (rel. Jan. 22, 2004) ("*Virginia Cellular Order*"); *Federal-State Joint Bd. on Universal Service, In re Highland*

---

[6] Findings of Fact 71 to 73 read as follows:

71. Prohibiting [Western Wireless's] ability to provide telecommunications service because of the alleged effect on incumbent providers would violate section 253(a) of the Act.

72. Subjecting [Western Wireless] to a public interest test based in part on the effect of the designation [upon] the incumbent providers is not competitively neutral, in that it favors the incumbent provider.

73. Prohibiting [Western Wireless's] ability to provide telecommunications service because of the alleged effect on incumbent providers would be contrary to the universal service goals of section 254(b) of the Act.

16

*Cellular, Inc. Petition for Designation as an Eligible Telecommunications Carrier in the Commonwealth of Virginia*, Memorandum Opinion and Order, CC Docket No. 96-45, 19 FCC Rcd 6422 (rel. April 24, 2004) ("*Highland Cellular Order*"); *Federal-State Joint Bd. on Universal Service, Advantage Cellular, Inc. Petition for Designation as an Eligible Telecommunications Carrier in the State of Tennessee,* Order, CC Docket No. 96-45, 19 FCC Rcd 20985 (rel. Oct. 22, 2004) ("*Advantage Cellular Order*").  The FCC did not grant the companies the eligibility statuses they sought for certain portions of the rural incumbent carriers' study areas because granting the companies eligible carrier statuses would place the incumbent carriers at a competitive disadvantage. *Virginia Cellular Order* at 19 FCC Rcd 1579-80, ¶ 35; *Highland Cellular Order* at 19 FCC Rcd 6436-37, ¶¶ 31-32; *Advantage Cellular Order* at 19 FCC Rcd 20995-96, ¶ 24.  The FCC concluded that granting the eligibility statuses in the portions denied would be against the public interest due to the possibility of "creamskimming." *Virginia Cellular Order* at 19 FCC Rcd 1579-80, ¶ 35; *Highland Cellular Order* at 19 FCC Rcd 6436-37, ¶¶ 31-32; *Advantage Cellular Order* at 19 FCC Rcd 20995-96, ¶ 24.  Creamskimming occurs when competitors "seek to serve only the low-cost, high-revenue customers in a rural telephone company's study area." *Advantage Cellular Order* at 19 FCC Rcd 20993, ¶ 20.  However, the Commission did grant eligible carrier statuses to the companies in areas where creamskimming would not occur and concluded that granting the eligibility statuses in those areas was in the public interest.  Based on the three FCC orders and the Commission's Findings of Fact, Texas Telephone asserts that a public interest analysis must include the impact an additional carrier will have on an incumbent.

When describing the public interest analysis for a rural study area, the FCC listed the following factors as relevant to a consideration of whether the addition of another carrier was in the public interest:

> [T]he benefits of increased competitive choice, the impact of the designation on the universal service fund, the unique advantages and disadvantages of the competitors service offering, any commitments made regarding quality of telephone service, and the competitive [eligible carrier's] ability to satisfy its obligation to serve the designated service areas within a reasonable time frame.

*Virginia Cellular Order* at 19 FCC Rcd 1575-76, ¶ 28; *Highland Cellular Order* at 19 FCC Rcd 6432, ¶ 22; *Advantage Cellular Order* at 19 FCC Rcd 20992, ¶ 18. While the factors listed by the FCC allow for consideration of the impact on incumbents, the factors do not require it. Further, a review of the record indicates that the Commission did consider the impact granting Western Wireless's designations would have on incumbents.

In its public interest analysis, the Commission concluded that the analysis is guided by the fundamental goal of preserving and advancing universal service. Further, the Commission concluded the public interest analysis is guided by the goal of ensuring the availability of *quality* telecommunication services at *affordable rates* and the goal of deploying advanced telecommunication services to all parts of the nation.

In making its determination, the Commission considered the effects of approving Western Wireless's designations on the competitiveness of the local telephone market and on the benefits to consumers. Specifically, in the Findings of Fact section of the Designation Order, the Commission found the following:

64. [Western Wireless] has committed to advertising the availability of supported services in a manner that fully informs the general public within the designated service areas.

66. The benefits competition is hoped to bring include lower prices, higher quality, and the rapid development of new telecommunications technologies.

69. The availability of [Western Wireless] as a second provider, which might not occur in the absence of the requested designations, will bring a choice of providers to consumers in rural areas, many of whom are now served by a single provider.

70. The choice of providers can reasonably be expected to provide consumers with greater range of service choices and pricing driven by the market place, rather than the monopolistic needs of a single provider.

The Commission also considered the impact on incumbents of granting Western Wireless's designation applications. Specifically, in the Findings of Fact section of the Designation Order, the Commission found the following:

74. The evidence in this case does not prove that any affected area is unable to support more than one [eligible carrier.]

75. Statutory tools are available to the Commission, including the Additional Financial Assistance provisions of P.U.C. Subst. R. 26.408,[7] to be used, if necessary and appropriate, to ameliorate the effects on incumbent providers of [Western Wireless's] designation as an [eligible carrier] and [eligible provider.]

After considering the Congressional directives to both provide affordable phone service and to increase competition, the Commission concluded the public interest would be served

---

[7] Rule 26.408 provides incumbent carriers serving rural and high-cost areas with additional financial support to allow carriers to provide basic services at reasonable rates. *See* Tex. Admin. Code § 26.408 (2004).

by granting the designation application and concluded having a second provider would benefit consumers. Specifically, the Commission found the following:

65. The Texas Legislature and the United States Congress have clearly articulated a policy in favor of competitive telecommunications choices for citizens in all areas of the country–not just in urban areas.

81. The public interest will be served by granting Western Wireless's applications for designation as an [eligible carrier] and [eligible provider.]

The Commission considered the competitiveness of the local market, the benefits to consumers of having an additional provider, and whether the areas in question will be able to support the incumbent and an additional carrier and provider. When considering the impact on incumbents, the Commission also considered that monetary assistance is available to incumbents to ameliorate the effects of Western Wireless being designated as an eligible carrier and provider. The Commission did all that it was required to do: it weighed the potential benefits and the potential harms of granting Western Wireless's eligibility applications. Further, the Commission has wide discretion when determining if an action is in the public interest. *See El Paso Elec. Co.*, 917 S.W.2d at 856. Because we believe the district court erred when it found that the Commission improperly concluded approving the designations for Western Wireless would be in the public interest, we will reverse that portion of the district court's decision.

*Southwest Study Area*

The district court also reversed the Designation Order issued by the Commission because the Commission granted the application for state and federal universal funding with respect

to the Texas portion of Southwest's study area without requiring Western Wireless to show it could serve the remaining Arkansas portion of Southwest's study area. Texas Telephone contends that another company cannot be designated as eligible to receive universal funds in an area served by a rural telephone company unless the company seeks to serve the entire study area of the rural telephone company.[8] Further, Texas Telephone alleges Western Wireless should have applied to serve Southwest's entire study area and not just the portion that is present in Texas.

In order for an applicant to be designated as eligible to receive state or federal universal service support in an area served by a rural telephone company, the applicant must seek to serve the entire service area of the rural telephone company. *See* 47 U.S.C.A. § 214(e)(1); 16 Tex. Admin. Code § 26.417(f)(1)(B)(I) (2004). However, in a situation that is factually similar to the one before us, the FCC considered how to designate Western Wireless as an eligible carrier in the study area of a rural local exchange carrier that crossed over state borders. *In re Federal-State Joint Bd. on Universal Service: Western Wireless Corp. Petition for Designation as an Eligible Telecommunications Carrier in the State of Wyoming*, Memorandum Opinion and Order, CC Docket No. 96-45, 16 FCC Rcd. 48, ¶¶ 23-24 (rel. December 26, 2000) ("*Wyoming Order*"). The FCC concluded that the state commission's ability to designate did not reach beyond the state's borders. *Id.* The FCC also concluded that Congress did not envision that state commissions would have to obtain permission from another state before designating an applicant as an eligible carrier for an area within the designating state's borders. In addition, the FCC endorsed the Commission's decision

---

[8] For a rural telephone company, the service area is the company's study area unless the state commission and the FCC both establish a different definition. *See* 47 U.S.C.A. 214(e)(5).

21

in this case not to require Western Wireless to apply for eligibility designations in Arkansas before approving its eligibility applications in Texas. *Id.* at ¶ 24 n.72.

Similarly, in the Designation Order, the Commission concluded that Congress gave it the power to designate eligible carriers only *within* Texas. Further, the Commission concluded that requiring Western Wireless to apply for eligibility designations in Arkansas would deprive the Commission of its independent authority to approve eligibility applications for areas that are within the boundaries of Texas. The Commission did exactly what it could do within the confines of this state: it granted Western Wireless's designations for the areas in Texas but also required a commitment to serve the entire study area. The maximum reach of the Commission extends only to the Texas border, and any designation issued by the Commission would have no effect in Arkansas. *See State of Cal. v. Copus*, 309 S.W.2d 227, 229 (Tex. 1958) (holding that state statutes do not have extraterritorial effect).

Because the district court erred by reversing the Designation Order, we sustain Western Wireless's points that it did not need to obtain a CCN in order to provide local service, that the Commission's granting of the eligibility designations it requested served the public interest, and that it did not have to seek eligibility designations in Arkansas before being approved to receive universal service funds in Texas.

**Compliance Order**

In the Designation Order's Finding of Fact 44, the Commission concluded that the $14.99 rate did not satisfy the 150% requirement. However, in the same order, the Commission set up a compliance docket to determine whether Western Wireless would be in compliance with

22

Commission rules before receiving universal fund disbursements. Among other items to consider, the Commission directed Western Wireless to file a tariffed service rate that complied with the 150% requirement.

After the Designation Order was issued, rule 26.25 went into effect. *See* Tex. Admin. Code § 26.25 (2002), *repealed by* 27 Tex. Reg. 9568 (2002). This new rule listed requirements that must appear on telephone bills in order for customers to be able to compare the prices charged by different providers. *Id.* The rule required providers to include all of the fees and surcharges in the amount charged for basic local service. Western Wireless, in the compliance proceeding, again filed the $14.99 rate. Texas Telephone filed a list of concerns with the Commission including a complaint that the $14.99 rate did not comply with the 150% requirement. However, the Commission staff and the Commission's Policy Development Division both agreed that the $14.99 rate did fall within the 150% requirement when all the factors listed in rule 26.25 were considered. Specifically, the Commission found that by including the single line charge in the incumbent's rates for basic local service, as listed in the rule, Western Wireless's rate fell within the 150% requirement.

After the Commission's Policy Development Division issued its notice of approval, Texas Telephone filed a list of exceptions to the approval and again asserted that the $14.99 rate did not comply with the 150% requirement. The Commission then agreed to consider Texas Telephone's exceptions in an open meeting and notified both Western Wireless and Texas Telephone of its intention to do so. Both Western Wireless's and Texas Telephone's counsel attended the open meeting. After the open meeting, the Commission signed the Compliance Order and approved Western Wireless's tariffed filing, which included the $14.99 rate.

23

In its district court suit for judicial review, Texas Telephone contended that the finding of fact in the Compliance Order stating that the $14.99 did comply with the 150% requirement was contrary to Finding of Fact 44 in the Designation Order. The district court concluded that the Commission violated section 2001.1775 of the Administrative Procedures Act, which prohibits an agency from modifying its findings in a contested case after judicial review of the case has begun, by attempting to alter a finding of fact in an order already on appeal. *See* Tex. Gov't Code Ann. § 2001.1775 (West 2000). In addition, the district court concluded that the Commission engaged in ad hoc adjudication by attempting to change the requirements of rule 26.417(c)(1)(B) without applying the proper rulemaking procedures.

However, these arguments ignore the fact that a new rule was promulgated between the time of the Designation Order and the Compliance Order. Agencies may revisit their prior adjudicated orders when changed circumstances occur. *South Tex. Indus. Servs., Inc. v. Texas Dep't of Water Res.*, 573 S.W.2d 302, 304 (Tex. Civ. App.—Austin 1978, writ ref'd n.r.e.). An agency has exclusive original jurisdiction to determine the question of changed circumstances. *Id.* at 304. The new rule changed the circumstances under which the original finding of fact occurred. The Commission correctly considered the effect that the new rule had on the proposed $14.99 rate.

Further, the Designation Order approved Western Wireless's eligibility application and was not meant to be the final word on the subject of compliance because the order specifically created a compliance docket to determine, among other things, whether the tariffs proposed by Western Wireless would comply with the Commission's rules. The finding in the Designation Order was a preliminary finding and was unnecessary for Western Wireless to be designated as an eligible

24

carrier and provider. As such, it does not have precedential value, and the Commission's new finding of fact does not violate section 2001.1775 of the Administrative Procedure Act. *Cf. Central Power & Light Co. v. Public Util. Comm'n*, 36 S.W.3d 547, 562 (Tex. App.—Austin 2000, pet. denied) (superfluous findings are analogous to immaterial jury findings, which courts may generally disregard); *Texas Health Facilities Comm'n v. Charter Med.-Dallas, Inc.*, 665 S.W.2d 446, 453 (Tex. 1984), *superseded by statute on other grounds* (some of Commission's findings were immaterial, irrelevant, and ignored by the court).

The district court also concluded that the Commission denied Texas Telephone due process because the Commission adjudicated a contested issue of fact without affording it the notice and hearing required in a contested case. However, nothing in the record indicates that any party requested that this case be treated as a contested case. In addition, Texas Telephone was able to file a list of exceptions regarding whether Western Wireless was in compliance with the Commission's rules and was able to present arguments at the public hearing. Texas Telephone was provided adequate notice of the public hearing, was present at the public hearing, and was able to express its concerns. It was not denied any due process rights.

Because the district court erred by declaring the Compliance Order void and by remanding the case to the Commission, we reverse the decision of the district court.[9]

---

[9] Because we are reversing the decision of the district court and affirming the decision of the Commission, we need not address Western Wireless's claim that Texas Telephone's appeal was not filed within the time limit prescribed by the Administrative Procedure Act or its claim that the district court erred by granting Texas Telephone's declaratory judgment action when the relief Texas Telephone requested was the same as the relief requested under the Administrative Procedure Act.

**CONCLUSION**

Because we find that the trial court erred in reversing both the Designation Order and the Compliance Order, we sustain Western Wireless's points that Western Wireless was not required to obtain a CCN, that the Commission did not apply an incorrect public interest analysis, that Western Wireless did not need to obtain an eligibility designation in Arkansas, that the Commission correctly considered a new rule in determining whether the $14.99 rate satisfied all necessary requirements, and that Texas Telephone was not deprived of due process. We, therefore, reverse the district court's judgment and render judgment affirming the Commission's two orders.

_____

David Puryear, Justice

Before Justices Kidd, Patterson and Puryear;
    Justice Kidd Not Participating

Reversed and Rendered

Filed:   April 7, 2005

26