# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00647-CV

**Harris County Hospital District, Appellant**

**v.**

**The Public Utility Commission of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. D-1-GN-09-002116, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Harris County Hospital District appeals the trial court's order affirming a final order by the Public Utility Commission of Texas which granted in part the District's complaint against Southwestern Bell Telephone, LP d/b/a AT&T ("AT&T"). The District sought a refund from AT&T, the District's telecommunications provider, for overcharges from 1995 to September 2008 under the Prompt Payment Act ("PPA").[1] In its final order, the Commission ordered AT&T to pay the overcharges for half of this period—six and one-half years—with interest until paid. Because we conclude that the Commission's order was arbitrary and capricious and prejudiced substantial rights of the District, we reverse the trial court's order and remand with instructions that the case be remanded to the Commission for further proceedings consistent with this opinion.

---

[1] *See* Tex. Gov't Code Ann. §§ 2251.001–.055 (West 2008).

**BACKGROUND**

From 1995 to September 2008, AT&T charged the District late payment fees for telephone service. In 2007, the District filed a formal complaint with the Commission alleging that AT&T had improperly charged the late payment fees in violation of the PPA. The Office of the Attorney General on behalf of the State intervened, and the matter was referred to the State Office of Administrative Hearings for a hearing on the merits.

After the Commission determined that the District was subject to the PPA, the parties stipulated that the amount of overcharges and interest during the thirteen year period was $487,273.32. The only issue then at the hearing on the merits was the appropriate amount of refund. The position of the State and the District was that the District should receive a full refund of the stipulated amount of overcharges for the entire period. Citing the Commission's rules and AT&T's tariff, they argued that there was no legal basis for the refund to be anything less than the full amount. AT&T and Commission staff countered that the Commission had discretion to order less than the full refund and that it should exercise that discretion and limit the refund to approximately four years of overbilling. They argued that the District was not "blameless" and that AT&T's conduct was in "good faith." The Commission staff also argued that "public interest" required the District's failure to complain for thirteen years to be taken into account.

In his proposal for decision, the administrative law judge ("ALJ") recommended a refund of the full stipulated amount. He concluded that he could find no "basis in statute or rule" to "recommend anything less than a full refund." The ALJ also provided analysis of the parties' policy arguments but stated that he could not "make such a policy determination" and that "any

2

policy exceptions . . . must be made by the Commission itself."[2]  He further stated that the "only arguable basis upon which the Commission could order less than a full refund would be for policy reasons not previously enumerated in Commission precedent." His conclusions of law included that, under Commission substantive rule 26.27(a)(3)(B)(i) and the terms of AT&T's tariff, the refund must be for the entire period of overbilling.  *See* 16 Tex. Admin. Code § 26.27 (2011) (Public Util. Comm'n of Tex., Bill Payment and Adjustments).

   After an open meeting, the Commission adopted the ALJ's proposal for decision with the exception that the Commission limited the refund to the preceding six and one-half years rather than the full 13-year period of overbilling.  In its order, the Commission stated its reasons for the partial refund:

> The Commission notes that the period of overbilling in this case, 1995 to 2008, is an extraordinary long one, particularly when considering the nature of the complainant. [The District] is a large, sophisticated public entity with sufficient resources to have

---

[2]  In his analysis, the ALJ found the arguments of AT&T and the Commission staff to be "unjust and untenable."  He explained:

> Staff and AT&T essentially argue that [the District]'s lack of diligence in complaining of late payment charges should serve to limit the amount of refund paid back to [the District].  On close examination, this argument seems patently inequitable.  Put bluntly, Staff and AT&T's argument is this:  because [the District] should have never paid AT&T the late payment charges and because [the District] did not realize it and complain for a long time, AT&T should be allowed to keep the money—money it was never entitled to receive.  To the ALJ, this argument seems unjust and untenable.  It allows AT&T to have a windfall simply because both AT&T and [the District] were allegedly mistaken in their belief as to the applicability of the PPA.  At a minimum, it seems that equity would dictate that the parties at least be restored to the positions they would have been in if the law had been followed by all parties.  Namely, all amounts that should not have been paid by [the District] should be refunded to it.

discovered and addressed this situation long before it brought this complaint to the Commission in 2007. It is in a better position than most other customers to discover the overbilling of late charges at issue in this case. Thus, the Commission finds it appropriate to hold [the District] partially responsible for the prolonged accrual of overcharges in this case.

In addition, the Commission acknowledges that the question of whether the Prompt Payment Act applied to late charges to entities such as [the District] was unsettled until last year when the Commission issued its order denying the appeal of Order No. 19. Prior to the decision, the Commission recognizes that telecommunications utilities had a reasonable basis to the position that [the Public Utility Regulatory Act] governed this question. Further, the Commission notes AT&T's assurances during the March 27, 2009 open meeting that it is conforming its billing to the Prompt Payment Act, and the Commission expects that all other telecommunications utilities will similarly follow the Prompt Payment Act.

"Consistent with the above discussion," the Commission deleted the ALJ's finding of fact 13 and conclusions of law 8 and 11.[3] The Commission also added the following findings of fact 10A, 10B, and 15A and conclusions of law 6A and 11A:

Findings of Fact

10A. [The District] knew, or should have known, that from at least 1995 until 2008 AT&T was improperly charging [the District] late payment charges that were not permitted under the Prompt Payment Act.

10B. It is appropriate to hold [the District] partially responsible for the prolonged accrual of overcharges in this case.

---

[3] In the ALJ's proposal for decision, finding of fact 13 stated: "As far back as 2000, AT&T recognized that the issue of payment penalties applicable to governmental entities was addressed by the Prompt Payment Act." In its final order, the Commission stated that it deleted finding of fact 13 because it was "premised, at least in part, on statements attributable to AT&T that were actually made by a predecessor entity that is not . . . a party to this current case."

The ALJ's conclusions of law 8 and 11 stated that the District was entitled to a full refund plus interest from 1995 to 2008 and that the District's complaint and request for relief should be granted.

. . . .

15A.    Given the specific facts of this case, it is appropriate to limit the amount that AT&T should refund to the amount of overcharges over the last six and one-half years, plus interest.

Conclusions of Law

6A.    Under P.U.C. Subst. R. 26.3, the Commission possesses the discretion to order a full refund, partial refund, or no refund as a result of overbilling by a utility.
. . . .

11A.    The complaint of [the District] against AT&T and the request for the Commission to grant relief to [the District] should be granted in part.

The State and the District filed motions for rehearing which were overruled by operation of law. The District then filed its petition for judicial review of the Commission's order. *See* Tex. Util. Code Ann. § 15.001 (West 2007). After a hearing, the trial court signed its order affirming the Commission's final order. This appeal followed.

**ANALYSIS**

The District raises five issues on appeal. The District contends that: (1) the Commission violated section 2003.049(g)–(h) of the government code when it modified the ALJ's proposal for decision, *see* Tex. Gov't Code Ann. § 2003.049(g)–(h) (West 2008); (2) the Commission exceeded its authority when it ordered a refund of only half of the period of admitted overbilling or that it was an abuse of discretion, arbitrary and capricious, a prohibited *ad hoc* rulemaking, or not reasonably supported by substantial evidence; (3) the Commission exceeded its authority, abused its discretion and/or acted arbitrarily or capriciously by declaring it in the "public

5

interest" and therefore good cause to order a partial refund on admitted overbilling by AT&T; (4) the Commission exceeded its authority, abused its discretion and/or acted arbitrarily or capriciously by relying upon substantive rule 26.3 to make an exception to substantive rule 26.27(a)(3)(B)(i) when the exception had a substantial negative fiscal impact on the District, *see* 16 Tex. Admin. Code § 26.3 (2011) (Public Util. Comm'n of Tex., Severability Clause), § 26.27(a)(3)(B)(i)); and (5) the Commission exceeded its authority, abused its discretion and/or acted arbitrarily or capriciously by relying on substantive rule 26.3 to make an exception to AT&T's general exchange tariff.

*Standard of Review*

We review the Commission's order in this case under the substantial evidence standard of review described in section 2001.174 of the government code. *See* Tex. Util. Code Ann. § 15.001; Tex. Gov't Code Ann. § 2001.174 (West 2008). Among the statutory grounds requiring reversal or remand, a court applying the substantial evidence rule shall reverse or remand an agency's order "if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . not reasonably supported by substantial evidence" or are "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Tex. Gov't Code Ann. § 2001.174(2)(E), (F).

"In determining whether an agency has acted arbitrarily or capriciously the reviewing court must decide whether the agency order was based on a consideration of all relevant factors." *Starr Cnty. v. Starr Indus. Servs., Inc.*, 584 S.W.2d 352, 355 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.); *see also Flores v. Employees Ret. Sys. of Tex.*, 74 S.W.3d 532, 544–45 (Tex. App.—Austin 2002, pet. denied). "The major factor that runs throughout arbitrary-capricious review

6

cases is that parties must be able to know what is expected of them in the administrative process." *Starr Cnty.*, 584 S.W.2d at 356. An agency also acts arbitrarily and capriciously when it fails to follow the clear, unambiguous language of its own rules. *See Rodriguez v. Service Lloyds Ins. Co.*, 997 S.W.2d 248, 255 (Tex. 1999); *Public Util. Comm'n of Tex. v. Gulf States Utils. Co.*, 809 S.W.2d 201, 207 (Tex. 1991) (citation omitted) ("[I]f the Commission has failed to follow the clear, unambiguous language of its own regulation, we must reverse its action as arbitrary and capricious."); *see also Texas Health Facilities Comm'n v. Charter Med.–Dallas, Inc.*, 665 S.W.2d 446, 454 (Tex. 1984) (discussing examples of agency action that are arbitrary and capricious).

The District's issues also address the construction of the Commission's rules. We review these questions de novo. *Rodriguez*, 997 S.W.2d at 254. "We construe administrative rules, which have the same force as statutes, in the same manner as statutes." *Id.* (citation omitted); *see also State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006) (addressing statutory construction). "Unless the rule is ambiguous, we follow the rule's clear language." *Rodriguez*, 997 S.W.2d at 254 (citation omitted). We defer to an agency's interpretation where there is vagueness, ambiguity, or room for policy determinations in the regulation, but "we cannot defer to an administrative interpretation that is 'plainly erroneous or inconsistent with the regulation.'" *Id.* at 254–55 (quoting *Public Util. Comm'n of Tex.*, 809 S.W.2d at 207); *BFI Waste Sys. of N. Am., Inc. v. Martinez Envtl. Grp.*, 93 S.W.3d 570, 575 (Tex. App.—Austin 2002, pet. denied).

*Amount of Refund*

Because they are dispositive, we turn to arguments made by the District in its second and third issues. The District contends that the Commission acted arbitrarily and capriciously when it ordered a refund of fees from only half of the period of admitted overbilling and by declaring it in the "public interest" and therefore good cause to order a partial refund. To support its arguments, the District points to rule 26.27(a)(3)(B)(i), which states:

> Overbilling. If charges are found to be higher than authorized by the DCTU's tariffs or the terms and conditions of service, an appropriate refund shall be made to the customer. . . . The refund shall be made for the entire period of the overbilling.

16 Tex. Admin. Code § 26.27(a)(3)(B)(i).[4] The Commission does not dispute that rule 26.27(a)(3)(B)(i) is clear and unambiguous and that its plain language supports a full refund "for the entire period" to the District. *See id.*; *Rodriguez*, 997 S.W.2d at 254. Rather, the Commission contends that under section 51.001(a) of Public Utility Regulatory Act and rule 26.3, it was within its discretion to make an exception to rule 26.27's refund requirement. *See* Tex. Util. Code Ann. § 51.001(a) (West 2007); 16 Tex. Admin. Code § 26.3.

a) *Section 51.001(a)*

The Commission argues that it has wide discretion under section 51.001(a) to balance customer protection with public interest and that this discretion authorized it to order less than a full

_____

[4] Rule 26.27 uses the acronym DCTU to refer to a dominant certificated telecommunications utility. 16 Tex. Admin. Code § 26.27(a) (2011) (Public Util. Comm'n of Tex., Bill Payment and Adjustments).

8

refund to the District. *See Public Util. Comm'n of Tex. v. Texas Tel. Assoc.*, 163 S.W.3d 204, 212–13 (Tex. App.—Austin 2005, no pet.) (discussing public interest determinations by Commission).

> During the relevant time period, section 51.001(a) stated in relevant part:

> It is the purpose of this subtitle to grant the commission authority to make and enforce rules necessary to protect customers of telecommunications services consistent with the public interest.

Tex. Util. Code Ann. § 51.001(a).[5] The Commission argues that this section authorizes it to balance customer protection with public interest. Viewing the plain language of this section, however, it does not support the Commission's assertion that it has discretion to hold a customer responsible for a utility's overbilling or to protect a utility by *not* enforcing one of its rules. *See Rodriguez*, 997 S.W.2d at 254. Rather, the plain language of section 51.001(a) authorized the Commission to enforce its rule "to protect customers of telecommunications services," the District in this instance. *See id.* We turn then to rule 26.3.

> b)   *Rule 26.3*

Rule 26.3 provides in relevant part that the Commission "may make exceptions to this chapter for good cause." 16 Tex. Admin. Code § 26.3. In its final order, the Commission concluded that, under rule 26.3, "the Commission possesses the discretion to order a full refund,

---

[5] This section was amended in May 2011, and the amendments deleted the quoted sentence relied upon by the Commission here. *See* Act of May 1, 2011, 82d Leg., R.S., ch. 98, § 1, 2011 Tex. Gen. Laws 98 (effective September 2011). Our references to section 51.001(a) refer to the section prior to the 2011 amendments.

partial refund, or no refund as a result of overbilling by a utility." On appeal, the Commission explains that it "determined that good cause existed to make a policy decision to encourage large, sophisticated entities to verify their phone bills more often than once every thirteen years."

To support its discretion under rule 26.3 to order a partial refund or no refund for overbilling for good cause on public interest grounds, the Commission points to prior decisions in which it has stated its discretion to order partial or no refunds. *See* Tex. Pub. Util. Comm'n, *Application of Guadalupe Valley Elec. Coop., Inc.*, Docket No. 13168 (Nov. 4, 1994) (order) (citing and addressing commission case precedent); *see also* Tex. Pub. Util. Comm'n, *Complaint of Memorial Hermann Healthcare Sys. Against Verizon Sw.*, Docket No. 34138 (July 31, 2007) (preliminary order) (recognizing Commission's discretion); Tex. Pub. Util. Comm'n, *Complaint of Southwestern Tariff on Behalf of Frank Gillman Pontiac Against Sw. Bell Tel. Co.*, Docket No. 16310 (Feb. 5, 1997) (preliminary order) (same); Tex. Pub. Util. Comm'n, *Complaint of Manor Downs Against Sw. Bell Tel. Co.*, Docket No. 14452 (Nov. 25, 1996) (order on rehearing) (same). These decisions, however, support the ALJ's recommendation here to order a full refund.

In the *Guadalupe Valley* proceeding, the Commission adopted and incorporated the portion of the ALJ's proposal for decision in which the ALJ stated that the Commission "has long followed a public interest standard in determining whether it is appropriate to order refunds in various contested cases" and set out five "broad considerations" that the Commission used to decide the amount of refund:

> (1) the intent of the utility; (2) the character of the illegal charge; (3) the difficulty to make a refund; (4) whether the utility (or shareholders) received excess profits due

10

to the illegal charge; and (5) whether the case arose as a result of a customer complaint.

*See Application of Guadalupe Valley*, at 5–6. The ALJ noted that not every factor was mentioned in each decision but that "the five identified issues encompass the generally applicable factors balanced by the Commission in refund decisions." *See id*. at 6. In that case, the issue of whether to order a refund arose during a compliance audit initiated by the Commission, and the Commission adopted the ALJ's finding that the utility "demonstrated good cause not to order refunds." *See id*. at 15. The ALJ noted that no customers complained or sought to intervene to seek refunds in the proceeding and found that "[i]t would be a long and tedious process . . . to determine a more accurate refund." *See id*. at 17, 20.

In both the *Manor Downs* and *Gillman Pontiac* proceedings, the Commission referenced the *Guadalupe Valley* factors and its discretion to order a partial or no refund but ordered a full refund for overbilling. In contrast with the *Guadalupe Valley* proceeding, these subsequent proceedings were initiated by customer complaints seeking refunds for overbilling. In reaching its decision in *Manor Downs*, the Commission found that "the equities in this instance might justify a partial refund of the overcharges" but that it was "understandable that a customer overcharged by a utility, such as Manor Downs, might presume that a full refund is forthcoming, based on the rule's present language." *Complaint of Manor Downs*, at 6. The Commission directed its Staff "to develop a substantive rule codifying the *Guadalupe Valley* factors" and to "incorporate any additional considerations, principles, requirements, or limitations it finds to be in the public interest." *Id*. at 6–7. Similarly, the Commission in *Gillman Pontiac* found as a threshold matter that the proceeding

should not be abated pending the adoption of an amended rule codifying the *Guadalupe Valley* factors and that a "full refund should be required" if it was determined that the utility had overcharged the complainants. *Complaint of Sw. Tariff on Behalf of Frank Gillman Pontiac*, at 4. The Commission expressly referenced its order in the *Manor Downs* proceeding and the "lack of specificity in the rule" as to the factors. *Id*. at 4–5. To date, the Commission has not codified the *Guadalupe Valley* factors into a substantive rule.

As such, the ALJ observed the *Guadalupe Valley* factors and followed the Commission's precedent. The ALJ reviewed the five factors in his proposal for decision, concluding that "three of these five factors clearly weigh against AT&T's request to limit the refund" and "[a]rguably" that a fourth factor also supported a full refund:

> Specifically, factors three to five all support a full refund. It is easy to make a refund, AT&T would receive a windfall and excess profits if allowed to keep the unauthorized late payment charges, and the case has arisen as a result of a customer complaint. Arguably, the character of the illegal charge—a late payment charge prohibited by the PPA—might also support a full refund.

The ALJ concluded: "Thus, even considering past precedent that would allow less than a full refund, the ALJ does not find it warrants such a recommendation in this case" and that "the only arguable basis upon which the Commission could order less than a full refund would be for policy reasons not previously enumerated in Commission precedent."

The Commission adopted the ALJ's proposal for decision except as to the relief granted but set forth other factors that it considered to determine the appropriate amount of the refund, such as the District's size, sophistication, resources, and responsibility for the

12

"extraordinarily long" period of overbilling. The Commission in its final order also "emphasize[d] that its conclusion in this docket regarding a partial refund [was] based on facts unique to this case and [did] not signal a precedential deviation from prior Commission rulings regarding customer refunds from utilities." The Commission argues that, because there is no rule in place specifically addressing the *Guadalupe Valley* factors, that it "continues to balance competing interests to determine on a case-by-case basis what, if any amount, is appropriate to order for a refund" and "continues to consider which, if any, of the factors are proper in a given case, and what policy considerations to evaluate to determine the appropriate amount of a refund."

Assuming without deciding that the *Guadalupe Valley* factors are valid, the Commission fails to follow its own precedent. The Commission departs from its earlier administrative policy to consider and balance the *Guadalupe Valley* factors in determining refund cases and relies on factors after the hearing on the merits and the record was closed—such as the size, sophistication, and resources of the customer and the customer's fault in the period of overbilling—contradicting the plain language of its rules. *See* 16 Tex. Admin. Code § 26.27(a)(3)(B)(i); *Gulf States Utils. Co.*, 809 S.W.2d at 207. The Commission does not dispute that rule 26.27(a)(3)(B)(i) supports a full refund "for the entire period" to the District. We also note that the Commission has failed to cite, and we have not found, a Commission decision ordering less than a full refund when the proceeding was initiated by customer complaint and the parties stipulated to the amount of overbilling by the utility. Given the "clear, unambiguous language" of rule 26.27, Commission precedent, and the absence of a codified rule setting forth factors to be considered in

13

refund cases for overbilling, we conclude that the Commission's failure to follow rule 26.27's refund requirement was "arbitrary and capricious." *See Gulf States Utils. Co.*, 809 S.W.2d at 207.

We also find the analysis in the *Flores* opinion instructive. In that case, the Board of Trustees for the Employees Retirement System of Texas denied Flores's application for occupational disability benefits based upon a policy that it adopted in a resolution several months after Flores's hearing. 74 S.W.3d at 544. This Court concluded that the post-hearing actions of the Board were arbitrary and capricious. *Id*. at 545. We noted that, although administrative agencies are not bound to follow their decisions in contested case hearings in the same way that courts are bound, that courts "frequently require that an agency explain its reasoning when it 'appears to the reviewing court that an agency has departed from its earlier administrative policy or there exists an apparent inconsistency in agency determinations.'" *Id*. at 544–45 (quoting *City of El Paso v. El Paso Elec. Co.*, 851 S.W.2d 896, 900 (Tex. App.—Austin 1993, writ denied)). Citing due process concerns, this Court further noted that had Flores known about the change in policy, "she might have presented her case differently." *Id*. at 545. "For a hearing to be meaningful, the parties must be able to present evidence on the issues to be decided." *Id*. Applying this reasoning here, at a minimum, had the District known that the Commission would be considering the factors that it did as determinative of the amount of refund, the District "might have presented its case differently." *Id.*

For these reasons, we conclude that the Commission's finding that "it was appropriate to limit the amount that AT&T should refund to the amount of overcharges over the last six and one-half years, plus interest" and its corollary decision to order a partial refund to be arbitrary and capricious. *See id.*; *Starr Cnty.*, 584 S.W.2d at 356. We also conclude that the Commission's

14

arbitrary limitation on the recovery period prejudiced substantial rights of the District. *See* Tex. Gov't Code Ann. § 2001.174(2). We sustain the District's second and third issues on this basis and need not address the District's remaining arguments and issues.[6] *See* Tex. R. App. P. 47.1.

## CONCLUSION

Because we conclude that the Commission's order was arbitrary and capricious and prejudiced substantial rights of the District, we reverse the order of the trial court and remand with instructions that the case be remanded to the Commission for further proceedings consistent with this opinion.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Rose and Goodwin

Reversed and Remanded

Filed: July 13, 2012

---

[6] To the extent that the District seeks to have this Court order the Commission to adopt the ALJ's proposal for decision and to award it expert's fees and attorney's fees, we decline to do so. *See* Tex. Gov't Code Ann. § 2001.174(2) (West 2008); Tex. Util. Code Ann. § 15.003 (West 2007); *Ford Motor Co. v. Butnaru*, 157 S.W.3d 142, 149 (Tex. App.—Austin 2005, no pet.) ("In a suit for judicial review of an agency action, the reviewing court is empowered to issue only a general remand when it finds error that prejudices an appellant's substantial rights.").