# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00025-CV

### Texas Citizens for a Safe Future and Clean Water and Mr. James G. Popp, Appellants

### v.

### Railroad Commission of Texas and Pioneer Exploration, Ltd., Appellees

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-06-001303, HONORABLE GISELA D. TRIANA, JUDGE PRESIDING

### O P I N I O N

Appellants Texas Citizens for a Safe Future and Clean Water and James G. Popp (collectively, "Texas Citizens") appeal from a district court judgment affirming the Railroad Commission's decision to grant a permit to Pioneer Exploration, Ltd. to operate a commercial injection well for the disposal of oil and gas waste. Texas Citizens argues on appeal that the Commission, in granting the permit, denied Texas Citizens due process and failed to adequately consider the public interest.

We hold that while the Commission did not deny Texas Citizens due process in granting the permit, the Commission did interpret "the public interest" too narrowly and therefore failed to adequately consider additional factors that may affect the public interest. We remand this case to the Commission for a reconsideration of the permit under a broader interpretation of "the public interest."

## BACKGROUND

Pioneer applied to the Commission for a permit to convert an old gas well in Wise County, Texas (the "Dinwiddie 1-A" well) into a commercial well for the disposal of oil and gas waste by underground injection. Several Wise County residents, including Texas Citizens, opposed Pioneer's application. Because the application was opposed, the Commission held an administrative hearing, during which all parties were allowed to present evidence.

The Commission requires that applications for injection wells include the identification of any wells located within a ¼-mile radius of the proposed injection well to ensure that there are no penetrations that could become a conduit for migration of the injected waste. In the area known as the Barnett Shale—the area where the Dinwiddie 1-A is located—the Commission's practice is to apply more stringent criteria to applications for injection wells, requiring that all wells located within a ½-mile radius of the proposed injection well be identified. Pioneer exceeded this requirement by including in its application a review of all wells located within a one-mile radius of the Dinwiddie 1-A.

During the initial administrative hearing, which was held on May 20, 2005,[1] Ronald Wefelmeyer, who prepared Pioneer's application, testified that there were no wells located within a ¼-mile radius of the proposed well. Wefelmeyer further testified that of the 14 wells located within a one-mile radius of the proposed well, all except one were cased in accordance with the surface-casing requirements established by the Texas Commission on Environment Quality (TCEQ)

---

[1] To avoid confusion, we will refer to the initial hearing as "the May hearing," and the reconvened hearing as "the October hearing."

2

and that the remaining well was plugged properly according to the TCEQ's requirements. Wefelmeyer also stated, while looking at an exhibit showing the geologic cross-sections of the underground strata in the area, that a particular well, the Donaldson No. 1, was not correctly located on the Commission's maps, which were relied on by Pioneer in completing the application and preparing the exhibits. Wefelmeyer testified that the Donaldson No. 1 was actually closer to the Dinwiddie 1-A than indicated on the maps.

Later testimony by James Popp suggested that there was an additional well, referred to during the remainder of the May hearing as the "mystery well," located within a ¼-mile radius of the Dinwiddie 1-A and improperly identified on the Commission's maps as being located elsewhere. The Commission's underground-injection-control staff became concerned about the existence of the "mystery well" and indicated that they may have taken another position or a more active role at the hearing if they had been aware of the existence of this well. In response, the hearing examiners recessed the hearing to allow Pioneer the opportunity to supply the Commission's staff with additional information regarding the "mystery well."

Texas Citizens argued that because Pioneer failed to identify the "mystery well," the application should be dismissed. The hearing examiners refused to dismiss the proceeding, stating that "unless the application were dismissed with prejudice, it could simply be refiled in any event. And we think it's a waste of the parties' time and a waste of the Commission's time to adopt a procedure which would contemplate having to start over on this case, bring everybody back for another hearing." The examiners stated that all parties would have an opportunity to present any evidence they cared to present when the hearing was reconvened.

3

By letter dated June 6, 2005, the Commission informed Pioneer that it no longer considered Pioneer's permit application to be administratively complete and listed a number of items required in order for the application to be complete. Pioneer subsequently amended its permit application and provided the Commission with supplemental information.

The hearing on Pioneer's permit application was reconvened on October 6, 2005. Wefelmeyer testified that he had identified the "mystery well" as the Donaldson No. 1, the well that had been mislocated on the Commission's maps. The Commission's maps erroneously represented that the Donaldson No. 1 was outside of a ½-mile radius of the Dinwiddie 1-A, when in fact the Donaldson No. 1 was within a ¼-mile radius and should have been identified as such in Pioneer's application.

In the interval between the May hearing and the October hearing, Pioneer performed a remedial cement squeeze job on the Donaldson No. 1, which satisfied the concerns of Commission staff regarding risks posed by the proximity of the Donaldson No. 1 to the Dinwiddie 1-A. As a result of the remedial cement squeeze, Pioneer's application was declared administratively complete by the Commission.

On December 2, 2005, the Commission's hearing examiners issued a Proposal for Decision (PFD), recommending issuance of the permit. The Commission adopted the PFD and issued the permit. After exhausting its administrative remedies, Texas Citizens sought judicial review of the Commission's decision. The district court affirmed the Commission's decision and this appeal followed.

## STANDARD OF REVIEW

We review the Commission's decision under a substantial evidence standard. *See* Tex. Util. Code Ann. § 105.001 (West 2007); *Entex v. Railroad Comm'n of Texas*, 18 S.W.3d 858, 862 (Tex. App.—Austin 2000, pet. denied). We shall reverse or remand a contested case if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are (1) in violation of a constitutional or statutory provision, (2) in excess of the agency's statutory authority, (3) made through unlawful procedure, (4) affected by other error of law, (5) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole, or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Tex. Gov't Code Ann. § 2001.174(2) (West 2000). In a substantial evidence review, "[t]he true test is not whether the agency reached the correct conclusion, but whether some reasonable basis exists in the record for the action taken by the agency." *Texas Health Facilities Comm'n v. Charter Med.—Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex. 1984).

## DISCUSSION

### *Due Process*

In its first issue, Texas Citizens argues that it was denied an opportunity for a fair hearing because the administrative hearing should have been terminated at the time the Commission determined that Pioneer's application was not administratively complete. Texas Citizens asserts that the hearing examiners violated agency procedural rules by allowing Pioneer to amend its application

5

and reconvening the hearing at a later date and that this failure to follow procedure resulted in a denial of Texas Citizens' procedural due process rights.

Due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *University of Texas Med. Sch. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995). "What process is due is measured by a flexible standard that depends on the practical requirements of the circumstances." *Id*. A party to a contested case before a state agency is entitled to a hearing and an opportunity "to respond and to present evidence and argument on each issue involved in the case." Tex. Gov't Code Ann. § 2001.051 (West 2000).

Texas Citizens argues that because Pioneer's application was not administratively complete at the time of the May hearing, Pioneer failed to satisfy its burden of proof and the application should have been dismissed as a result. Texas Citizens further claims that by failing to dismiss the application, the hearing examiners violated an administrative code section stating that the Commission shall administratively deny any application that remains incomplete after the applicant has had the opportunity to make up to two supplemental filings. *See* 16 Tex. Admin. Code § 1.201 (2004) (Tex. R.R. Comm'n, Permit Processing). However, there is no evidence in the record to suggest that Pioneer had exhausted two supplemental filing opportunities at the time of the May hearing.[2] After the "mystery well" was discovered, the May hearing was adjourned and the Commission requested that Pioneer submit certain information required to complete the application.

---

[2] There is evidence that one supplemental filing was made prior to the May hearing. By letter dated March 18, 2005, the Commission requested additional information regarding Pioneer's permit application, which Pioneer provided on March 29, 2005.

In response, Pioneer supplemented its application and the Commission determined that the application was administratively complete. These facts do not support a finding that the hearing examiners violated § 1.201 by allowing Pioneer to supplement its application or that the inaccuracy discovered in Pioneer's application constituted a failure to satisfy its burden of proof that warranted dismissal.[3]

Furthermore, Texas Citizens was afforded the opportunity to present any evidence it desired to present at both the May and the October hearings. At the May hearing, the examiners stated that, "When we reach the end of whatever anybody wants to present today, we are going to hold the record open in this case . . . then we are going to set a continued hearing in this matter, and at that point the parties can take whatever position they want to." In order to avoid any confusion, the hearing examiners further stated, "If everybody wants to come back and have another say, well, they will have that chance. What we are saying is, if anybody would prefer—who hasn't already testified would prefer to give testimony today so you don't have to come back, well, we will give you that chance." Counsel for Texas Citizens appeared at both hearings to offer testimony and evidence in support of Texas Citizens' position, as well as cross-examine Pioneer's witness. In light of the Commission's efforts to allow all parties to the proceeding an ample opportunity to present evidence, it is clear that Texas Citizens was afforded a fair hearing.

---

[3] Furthermore, 16 Tex. Admin. Code § 1.201 applies to permit applications that have not yet been docketed as contested case proceedings. *See* 16 Tex. Admin. Code § 1.201 (2004) (Tex. R.R. Comm'n, Permit Processing). It is not clear whether this rule even applies to a situation in which an application was considered administratively complete, docketed as a contested case proceeding, and then subsequently deemed incomplete.

The Commission not only provided Texas Citizens with a fair hearing, but also took Texas Citizens' interests into account in deciding to recess the hearing. As the hearing examiners pointed out at the close of the May hearing, the purpose of the Commission's decision to recess the hearing and reconvene at a later date was to avoid wasting the parties' time and resources by starting the hearing process again from the beginning. Examiner James Doherty stated:

> The application is not going to be dismissed or ordered to be denied or anything like that right at this time because unless the application were dismissed with prejudice, it could simply be refiled in any event. And we think it's a waste of the parties' time and a waste of the Commission's time to adopt a procedure which would contemplate having to start over on this case, bring everybody back for another hearing.

By choosing to recess the hearing and reconvene at a later date, the Commission prevented the waste of time and resources that would have resulted if the hearing had been dismissed and the application refiled. Texas Citizens, rather than suffering from a violation of due process, actually benefitted by avoiding an unnecessary repetition of the agency proceedings on a refiled application.

Because the Commission did not violate agency procedures in recessing and subsequently reconvening the hearing and because Texas Citizens was given a fair hearing with ample opportunity to respond and to present evidence and argument on each issue involved in the case, we hold that Texas Citizens' due process rights were not violated in the administrative proceeding on Pioneer's permit application. Texas Citizens' first issue is overruled.

*Public Interest*

Before issuing an injection well permit, the Commission must make a finding "that the use or installation of the injection well is in the public interest." Tex. Water Code Ann.

§ 27.051(b)(1) (West Supp. 2006). In its second issue, Texas Citizens argues that the Commission took too narrow a view of "the public interest" by focusing only on the increased recovery of oil and gas and disregarding the public interest concerns presented by Texas Citizens.

At the May hearing, Texas Citizens offered testimony and evidence that they alleged related to the public interest. Texas Citizens' primary concern was a public-safety issue regarding the fact that trucks hauling saltwater waste would frequently be accessing the well site using narrow, unpaved roads. Wefelmeyer testified that the proposed disposal well could operate 24 hours a day, 7 days a week, with 20 to 50 hauling trucks—each carrying up to 100 barrels of saltwater waste—accessing the site each day. Texas Citizens took the position that because the dirt roads contained blind curves and were often used by children and pedestrians, the presence of a large number of trucks hauling between 2,000 and 5,000 barrels of saltwater waste a day would create a public-safety issue.

Pioneer and the Commission argue that the factor considered in granting Pioneer's application—the increased capacity for oil and gas production in Texas—is an appropriate factor for making a public interest finding and that, while the hearing examiners did in fact hear and consider evidence on Texas Citizens' traffic-related concerns, these types of issues were not within the Commission's jurisdiction and could not be considered.

There is no controlling precedent interpreting what considerations the Commission may weigh when determining whether a proposed injection well is in the public interest under Texas Water Code § 27.051(b)(1). Administrative agencies have wide discretion in determining what factors to consider when deciding whether the public interest is served. *See Public Util. Comm'n of Texas v. Texas Tel. Assoc.*, 163 S.W.3d 204, 213 (Tex. App.—Austin 2005, no pet.). "An agency

9

abuses its discretion in reaching a decision if it omits from its consideration factors that the legislature intended the agency to consider, includes in its consideration irrelevant factors, or reaches a completely unreasonable result after weighing only relevant factors." *Hinkley v. Texas State Bd. of Med. Examiners*, 140 S.W.3d 737, 743 (Tex. App.—Austin 2004, pet. denied).

The Commission relies solely on the possibility for increased capacity for oil and gas production as the reason that the proposed injection well is in the public interest. In the proposal for decision, the hearing examiners state:

> It is in the public interest to safely produce hydrocarbon reserves in order to meet market demand. . . . The production of hydrocarbons for use by the people of Texas and industry serves the public interest. Production from the Barnett Shale is obtained by fracing with large volumes of water and the frac water must then be recovered and disposed of. The safe and proper disposal of produced saltwater in disposal wells such as the one proposed by Pioneer meets this need and thereby serves the public interest. . . It is in the public's interest to encourage the safe drilling and completion of more wells for the production of oil and gas.

Finding of fact 7 in the PFD states:

> Use of the proposed disposal well is in the public interest because it will provide needed additional disposal capacity and an economical means of disposing of produced salt water from completed wells in the rapidly expanding Barnett Shale Field Area, thereby increasing ultimate recovery from these wells and preventing waste. The safe and proper disposal of produced saltwater serves the public interest.

Conclusion of law 5 merely tracks the statutory language, stating, "The use of the proposed disposal well is in the public interest pursuant to Sec. 27.051 of the Texas Water Code."

While relying solely on the increased production of oil and gas to indicate that Pioneer's well would be in the public interest, the hearing examiners declined to consider Texas

Citizens' public-safety concerns, determining that traffic issues do not come within the Commission's jurisdiction. The PFD explicitly states:

> The Commission does not have jurisdiction to regulate truck traffic on the state's roads and highways. The examiners sympathize with the Protestants' concerns about property values and other quality of life issues, but conclude that Pioneer has met its burden of proof on the statutory issues the Commission is required to consider, including the public interest issue.

The Commission relies heavily on an unpublished opinion from this Court, *Grimes v. State*, No. 03-04-00154-CV, 2005 Tex. App. LEXIS 6963 (Tex. App.—Austin Aug. 26, 2005, no pet.) (mem. op.), citing it in support of the argument that the Commission may take the increased production of mineral resources into account in determining whether a proposed injection well is in the public interest. However, the holding in *Grimes* was that the conservation of natural resources could be considered as one factor in making a public interest determination, because a party opposed to the permit had argued that maximizing the natural resource yield was "not the proper 'public interest' inquir[y] the legislature intended." *Id*. at *11. *Grimes* does not hold that the conservation of natural resources should be considered as the *only* relevant factor, to the exclusion of any additional factors that might affect the public interest, which the Commission appears to have done in the present case. Texas Citizens does not dispute that increased capacity for the production of oil and gas should be included in the public interest analysis, but argues instead that the Commission should have also taken additional factors under consideration before granting Pioneer's permit.

The Commission further contends that traffic-related issues, such as the concerns presented by Texas Citizens, should not be reviewed in making a public interest determination,

11

claiming that a comparison of the injection-well-permitting requirements set forth in Texas Water Code § 27.051(b) with the requirements found in § 27.051(a) for permits issued by the TCEQ shows that the legislature did not intend for the Commission to take public-roadway issues into account.[4] The findings that must be made by the TCEQ under § 27.051(a) are:

(1) that the use or installation of the injection well is in the public interest;

(2) that no existing rights, including, but not limited to, mineral rights, will be impaired;

(3) that, with proper safeguards, both ground and surface fresh water can be adequately protected from pollution;

(4) that the applicant has made a satisfactory showing of financial responsibility if required by Section 27.073 of this code;

(5) that the applicant has provided for the proper operation of the proposed hazardous waste injection well;

(6) that the applicant for a hazardous waste injection well not located in an area of industrial land use has made a reasonable effort to ensure that the burden, if any, imposed by the proposed hazardous waste injection well on local law enforcement, emergency medical or fire-fighting personnel, or public roadways, will be reasonably minimized or mitigated; and

(7) that the applicant owns or has made a good faith claim to, or has the consent of the owner to utilize, or has an option to acquire, or has the authority to acquire

---

[4] The TCEQ exercises jurisdiction over the issuance of permits for injection wells disposing of industrial and municipal waste. Tex. Water Code Ann. § 27.011 (West 2000). Industrial and municipal waste includes waste that results from "processes of industry, manufacturing, trade or business; development or recovery of natural resources other than oil or gas; or disposal of sewage or other wastes of cities, towns, villages, communities, water districts, and other municipal corporations." *Id*. § 27.002(5). The Commission, on the other hand, exercises jurisdiction over the issuance of permits for injection wells disposing of oil and gas waste. *Id*. § 27.031. Oil and gas waste includes waste related to the production of oil, gas, or geothermal resources, the underground storage of hydrocarbons other than storage in artificial tanks or containers, or the operation of gasoline plants, natural gas processing plants, or pressure maintenance or repressurizing plants. *Id*. § 27.002(6).

through eminent domain, the property or portions of the property where the hazardous waste injection well will be constructed.

The Commission, on the other hand, is only required to make the following findings under § 27.051(b):

(1) that the use or installation of the injection well is in the public interest;

(2) that the use or installation of the injection well will not endanger or injure any oil, gas, or other mineral formation;

(3) that, with proper safeguards, both ground and surface fresh water can be adequately protected from pollution; and

(4) that the applicant has made a satisfactory showing of financial responsibility if required by Section 27.073 of this code.

While the first four required findings are essentially the same for both the Commission and the TCEQ, there are no comparable provisions in § 27.051(b) that would require the Commission to make the findings that are required of the TCEQ by § 27.051(a)(5), (6), and (7). The Commission argues that because § 27.051(a)(6) specifically requires the TCEQ to make a finding that any burden on public roadways is minimized or mitigated and that § 27.051(b) does not contain such a requirement, the legislature did not intend for the Commission to consider issues related to public roadways. We disagree.

The Commission ignores the fact that § 27.051(a)(6) is limited in its applicability only to hazardous waste injection wells that are not located in areas of industrial land use. The additional requirement found in § 27.051(a)(6) could easily be the result of the legislature's belief that hazardous waste injection wells in non-industrial areas require more careful oversight and explicit

13

statutory requirements regarding the issuance of permits. Upholding the Commission's interpretation of § 27.051 would mean that the TCEQ may ignore any public-interest concerns regarding public roadways, as well as local law enforcement, emergency medical, or fire-fighting personnel, in reviewing permit applications for non-hazardous waste injection wells or for hazardous waste injection wells in industrial areas, and that the Commission may ignore such concerns in reviewing all permit applications. This Court declines to hold that public roadways and local law enforcement, emergency medical, and fire-fighting personnel are not to be afforded consideration unless a hazardous waste injection well is proposed that will be located in a non-industrial area. The specific mandate found in § 27.051(a)(6), which affects only very limited types of permit applications regulated by the TCEQ, does not necessarily imply that the legislature intended to foreclose consideration of public interest concerns related to public roadways in all other situations. The statutory requirement that the TCEQ make specific findings related to public roadways for hazardous waste injection wells in non-industrial areas simply does not support an inference that the Commission may ignore traffic-related factors affecting the public interest.[5]

Because the Commission believed it could only review the effect on oil and gas production in making a public interest determination on Pioneer's permit, we hold that the

_____

[5] The Commission also ignores the fact that § 27.051(d) states that the TCEQ, in determining whether an injection well is in the public interest, "shall consider, but shall not be limited to the consideration of" three additional factors—the compliance history of the applicant, whether there is a practical, economic, and feasible alternative to the injection well reasonably available, and, for hazardous waste disposal wells, whether the applicant will maintain sufficient public liability insurance or otherwise demonstrate sufficient financial responsibility. This provision further demonstrates that the legislature chose to apply additional scrutiny to hazardous waste disposal wells. Furthermore, § 27.051(d), in stating that the TCEQ shall not be limited to the factors enumerated, emphasizes that a broad spectrum of factors should be employed in making a public-interest determination.

14

Commission abused its discretion in failing to consider other factors in determining whether the permit would be in "the public interest" under Texas Water Code § 27.051(b)(1). While the legislature did not specify which factors should be considered, the scope of "the public interest" must be broader than the effect on oil and gas production. Such a narrow interpretation of "the public interest" could potentially allow the Commission to rubber stamp injection well permit applications despite legitimate public safety concerns, which the legislature, in passing § 27.051(b) and requiring that the effect on the public interest be considered, clearly did not intend.

In a post-submission brief filed after oral argument, the Commission argues that, while it was not required to consider traffic-related concerns in ruling on Pioneer's permit application, there is insufficient evidence in the record to show that the Commission failed to consider such factors. To support this contention, the Commission notes that only the findings of fact and conclusions of law of the PFD were adopted by the Commission's final order, so that the comments by the hearing examiners in the PFD regarding the Commission's lack of jurisdiction to consider traffic-related concerns did not represent the official position of the Commission. However, regardless of whether the Commission's final order incorporates the hearing examiners' statements, the Commission continues to argue in its post-submission brief, as it did at oral argument and in its initial brief, that traffic-related concerns are not within the jurisdiction of the Commission and therefore should not be considered in public interest determinations.[6] The Commission's position

---

[6] In order to support this position, the Commission's initial brief quotes the portions of the PFD that it now claims are only the views of the hearing examiners and not the Commission itself.

15

taken on appeal and the statements made by the hearing examiners in the PFD provide sufficient evidence that Texas Citizens' traffic concerns were not considered as part of the public interest analysis.

Furthermore, the Commission argues that it cannot consider the effect of increased truck traffic on rural roads because regulating road-safety issues is solely within the jurisdiction of other governmental agencies. However, practically *all* matters of public safety are regulated by some governmental agency. If the Commission is foreclosed from considering any matter that falls within the jurisdiction of another governmental agency when making public interest determinations, then the Commission's realm of inquiry is essentially limited to reviewing a proposed injection well's effect on oil and gas production. Such a limited scope of review cannot have been the legislature's intent in giving the Commission the broad mandate found in Texas Water Code § 27.051(b) to consider "the public interest." The Commission does not need the authority to regulate road safety issues in order to determine whether the development of an injection well will create traffic-related problems of such magnitude that the harm to the public outweighs the benefit of increased oil and gas production. The Commission is not being asked to regulate road safety, but merely to consider potential threats to public safety before issuing an injection-well permit.

In addition to the power to deny applications that are not in the public interest, the Commission may also resolve public-safety issues by regulating the activities of the injection well itself. The Commission's final order places a number of "special conditions" and "standard conditions" on the proposed injection well. Standard condition number 12(e) states, "Prior to beginning operation, the facility shall have security to prevent unauthorized access. Access shall be

16

secured by a 24-hour attendant, a fence and locked gate when unattended, or a key-controlled access system." This condition placed on Pioneer's permit requiring the maintenance of sufficient security to prevent unauthorized access suggests that the Commission has exercised authority to regulate the operations of the injection well in order to ensure public safety. Similarly, the Commission may be able to conserve natural resources, while also addressing any relevant public-safety concerns, by taking steps such as regulating the number of trucks accessing the well, limiting the hours of operation, or requiring the use of alternative access routes to the well. When reconsidering the public interest finding on remand, the Commission might also consider whether any possible conditions may be applied to the injection well to alleviate relevant public-safety concerns.

While administrative agencies have wide discretion in determining what factors to consider when deciding whether the public interest is served, we hold that the Commission abused its discretion by limiting its public interest determination to the conservation of natural resources. We remand to the Commission to reconsider its public interest determination, using a broader definition of "the public interest," which includes public-safety concerns where evidence of such concerns has been presented.

## CONCLUSION

We affirm the district court's judgment that the Commission did not violate Texas Citizens' due process rights by recessing and reconvening the hearing on Pioneer's injection well permit. However, because the Commission relied on an improperly narrow definition of "the public interest" in granting Pioneer's application, we reverse the district court's judgment affirming the

17

Commission's final order and remand to the Commission for further proceedings consistent with this opinion.

_____

Diane Henson, Justice

Before Chief Justice Law, Justices Waldrop and Henson

Affirmed in part; Reversed and Remanded in part

Filed:   December 6, 2007