IN THE SUPREME COURT OF TEXAS
 
════════════
No. 
08-0497
════════════
 
Railroad Commission of Texas 
and Pioneer Exploration, Ltd., Petitioners,
 
v.
 
Texas Citizens for a Safe 
Future and Clean Water and
James G. Popp, 
Respondents
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the Third 
District of Texas
════════════════════════════════════════════════════
 
 
Argued April 14, 2010
            

 
            
Justice Guzman delivered 
the opinion of the Court, joined by Justice Hecht, Justice Wainwright, Justice Medina, Justice Green, and Justice Johnson.
 
            
Chief Justice Jefferson 
delivered an opinion concurring in the judgment, joined by Justice Willett and Justice Lehrmann.
 
            
The Texas Water Code requires the Railroad Commission of Texas to weigh 
the “public interest” in the permitting of proposed oil and gas waste injection 
wells. In a ruling, the Commission declined to consider traffic-safety factors 
in its public interest inquiry. We determine whether the Commission’s 
interpretation of “public interest” is entitled to judicial deference. Because 
we conclude the Commission’s construction of the phrase was reasonable and in 
accord with the plain language of the statute, we hold the court of appeals 
erred in not deferring to the Commission’s interpretation. We therefore reverse 
the court of appeals’ judgment and render judgment for the petitioners in 
accordance with the trial court’s original judgment.
            
I. Background
            
The Barnett Shale is a large, prolific oil and gas field lying beneath 
several counties, including Wise County, in northeast Texas. As in other shale 
formations, wells in the Barnett Shale require fracture stimulation in order to 
produce. Fracing a well entails pumping large volumes 
of water and sand into reservoir rock, which then mixes with saline formation 
water and must be flowed back out of the well before production can begin. A 
company fracing a well must dispose of the resulting 
waste. Most companies do so by injecting the waste into subsurface zones which 
are naturally saline environments, usually in old wells converted to injection 
wells.[1] A company seeking to convert a well to an 
injection well for oil and gas waste must apply to the Commission for a permit. 
Tex. Water Code § 
27.031.
            
In granting an injection well permit, the Commission is required to make 
the following findings:
(1) that the use or 
installation of the injection well is in the public interest;
 
(2) that the use or 
installation of the injection well will not endanger or injure any oil, gas, or 
other mineral formation;
 
(3) that, with proper 
safeguards, both ground and surface fresh water can be adequately protected from 
pollution; and
 
(4) that the applicant has made 
a satisfactory showing of financial responsibility if required by Section 
27.073.
 
Id. § 27.051(b) (emphasis added). The 
instant dispute centers on the requisite public interest finding in section 
27.051(b)(1).
            
Pioneer Exploration, Ltd. (Pioneer) applied to the Commission for a 
permit to convert an existing well into an injection well for the disposal of 
oil and gas waste. But several Wise County residents living near the 
well—respondents Texas Citizens for a Safe Future and Clean Water and James Popp 
(collectively, Texas Citizens)—opposed the proposed injection well, 
necessitating a contested administrative hearing before Commission hearing 
examiners. At the hearing, Texas Citizens voiced a variety of concerns about the 
well’s environmental soundness, but also presented arguments and evidence 
related to traffic-safety issues. Specifically, Texas Citizens argued that large 
trucks used to haul waste water to the well would damage nearby roads and pose a 
threat to area residents who use the roads, and thus would not serve the “public 
interest” under section 27.051(b)(1).[2] Pioneer did not rebut this traffic-safety 
evidence. Instead, Pioneer essentially argued that the production of natural gas 
is in the public interest.
            
The hearing examiners recommended issuing the permit. In the examiners’ 
findings of fact and conclusions of law, adopted by the Commission in its final 
order, the examiners found
[u]se of the proposed disposal well is in the public 
interest because it will provide needed additional disposal capacity and an 
economical means of disposing of produced salt water from completed wells in the 
rapidly expanding Barnett Shale Field Area, thereby increasing ultimate recovery 
from these wells and preventing waste. The safe and proper 
disposal of produced saltwater serves the public interest.
 
            
. . .
 
The use of the proposed disposal well is in the public 
interest pursuant to Sec[tion] 27.051 of the Texas Water Code.
 
            
In the proposal for decision, the examiners additionally concluded the 
“production of hydrocarbons for use by the people of Texas and industry serves 
the public interest.” In addressing Texas Citizens’ traffic-safety evidence, the 
examiners stated the Commission “does not have jurisdiction to regulate truck 
traffic on the state’s roads and highways.” The examiners concluded that, while 
they empathized with Texas Citizens’ concerns about property values and quality 
of life, Pioneer had met its burden of proof on the public interest finding.[3]
            
The Commission adopted the examiners’ findings of fact and conclusions of 
law and approved Pioneer’s application. Texas Citizens appealed to the trial 
court, which affirmed the Commission’s order. The court of appeals, however, 
reversed, holding that the Commission abused its discretion in interpreting the 
“public interest” inquiry too narrowly by solely focusing on the proposed well’s 
effect on the conservation of natural resources.[4] See 254 S.W.3d 
492, 503. The court of appeals remanded the case to the Commission to 
“reconsider its public interest determination, using a broader definition of 
‘the public interest,’ which includes public-safety concerns where evidence of 
such concerns has been presented.” Id. The Commission moved for rehearing 
en banc, which the court of appeals denied in a per curiam opinion with two justices writing separately, 
concurring in the denial. See id. at 503–07. 
The Commission and Pioneer petitioned this Court for review of the court of 
appeals’ holding on the “public interest” issue.
            
II. Standard of Review
            
The parties 
disagree on the contours of the precise issue in dispute, which is a matter we 
initially address. The Commission contends this case fundamentally concerns the 
need for court deference to an agency’s interpretation of what it argues is an 
ambiguous statute. If an agency’s construction of an ambiguous statute it is 
charged with administering is reasonable, the Commission urges, it is improper 
for a court to overturn that interpretation.[5] Texas Citizens counters that the core 
issue is not an agency’s interpretation of a statutory term or even the proper 
definition of “public interest,” but rather whether that phrase may include 
factors beyond the production of oil and gas, requiring the Commission to weigh 
all evidence offered in support of or against the public interest 
finding.
            
We agree with the Commission that this case turns on a matter of 
statutory construction—specifically, the definition of the term “public 
interest”—and therefore the proper level of deference a court must grant the 
Commission’s interpretation of that term. As Texas Citizens asserts, the 
Commission’s order does not expressly define the term “public interest.” Rather, 
the order—by way of adopting the examiners’ findings of fact and conclusions of 
law—states that the well is in the public interest because of its positive 
effect on increased productivity from wells in the Barnett Shale field. But 
although the Commission’s final order does not explicitly adopt the examiners’ 
statements concerning Texas Citizens’ traffic-safety evidence, the Commission 
has made clear, throughout these proceedings, that it does not view its public 
interest analysis as an open-ended inquiry including public-safety issues, but 
rather one limited to matters related to oil and gas production. The crux of the 
dispute, then, is whether the term “public interest” in section 27.051(b) of the 
Water Code is a broad, open-ended term, encompassing any conceivable subject 
potentially affecting the public, or a more narrow term that does not include a 
subsidiary issue like traffic safety but is limited to matters related to oil 
and gas production.
            
The Utilities Code generally requires a court to review a decision of the 
Commission under a substantial evidence standard. See Tex. Util. Code § 105.001(a) (“Any 
party to a proceeding before the railroad commission is entitled to judicial 
review under the substantial evidence rule.”). This standard requires a court to 
reverse or remand a case for further proceedings “if substantial rights of the 
appellant have been prejudiced because the administrative findings, inferences, 
conclusions, or decisions” are, among other things, not reasonably supported by 
substantial evidence, or are “characterized by abuse of discretion.” Tex. Gov’t Code § 
2001.174(2).
            
The gravamen of this dispute, however, is a governmental agency’s 
construction of a statute it is charged with administering. The construction of 
a statute is a question of law we review de novo. First Am. 
Title Ins. Co. v. Combs, 258 S.W.3d 627, 631 (Tex. 2008); F.F.P. 
Operating Partners, L.P. v. Duenez, 237 S.W.3d 
680, 683 (Tex. 2007). We have long held that an agency’s interpretation 
of a statute it is charged with enforcing is entitled to “serious 
consideration,” so long as the construction is reasonable and does not conflict 
with the statute’s language. We have stated this principle in differing ways, 
but our opinions consistently state that we should grant an administrative 
agency’s interpretation of a statute it is charged with enforcing some 
deference.[6]
            
Citing the Supreme Court’s seminal case on judicial deference, the 
Commission argues that state law principles regarding judicial deference to an 
agency’s interpretation of a statute it implements are closely aligned to 
federal-court precedent. See Chevron U.S.A. Inc. v. Natural 
Res. Def. Council, Inc., 467 U.S. 837 (1984). Under the 
Chevron doctrine, a federal court embarks on a two-part test in 
determining whether to defer to an agency’s construction of a statute. First, 
the court must consider whether Congress has “directly spoken to the precise 
question at issue.” Id. at 842. If Congress’s 
intent is clear and unambiguous under the language of the statute, that is the 
end of the inquiry. See id. at 842–43. If the 
statute is silent or ambiguous, however, the court does not impose its own 
construction of the statute, but rather defers to the agency’s interpretation so 
long as it is reasonable. See id. at 843. The 
Chevron doctrine applies to a formal agency construction of a statute, as 
in an order following a formal adjudication or a regulation. See U.S. v. Mead 
Corp., 533 U.S. 218, 229–30 (2001). Informal interpretations, such as 
advisory opinions, may merit some deference, as articulated in Skidmore v. 
Swift & Co., 323 U.S. 134, 139–40 (1944), but not the high deferential 
standard afforded in Chevron. See Mead, 533 U.S. at 234–35; see 
generally Bradley Lipton, Accountability, Deference, and the 
Skidmore Doctrine, 119 Yale 
L.J. 2096 (2010).
            
We have never expressly adopted the Chevron or Skidmore 
doctrines for our consideration of a state agency’s construction of a statute, 
but we agree with the Commission that the analysis in which we engage is 
similar. In our “serious consideration” inquiry, we will generally uphold an 
agency’s interpretation of a statute it is charged by the Legislature with 
enforcing, “‘so long as the construction is reasonable and does not contradict 
the plain language of the statute.’” First Am. Title Ins. Co., 258 S.W.3d 
at 632 (quoting Tarrant Appraisal Dist. v. Moore, 845 S.W.2d 820, 823 
(Tex. 1993)). As we observed in Fiess, this 
deference is tempered by several considerations:
It is true that courts give some deference to an agency 
regulation containing a reasonable interpretation of an ambiguous statute. But 
there are several qualifiers in that statement. First, it applies to formal 
opinions adopted after formal proceedings, not isolated comments during a 
hearing or opinions [in a court brief]. Second, the language at issue must be 
ambiguous; an agency’s opinion cannot change plain language. Third, the agency’s 
construction must be reasonable; alternative unreasonable constructions 
do not make a policy ambiguous.
 
Fiess v. State Farm 
Lloyds, 202 S.W.3d 
744, 747–48 (Tex. 2006).
            
Here, the examiners’ opinion, and the Commission’s 
final order, were formally adopted after an adjudication. Accordingly, we 
will review the Commission’s interpretation of “public interest” and uphold it 
if it is reasonable and in accord with the plain language of the statute. See 
First Am. Title Ins. Co., 258 S.W.3d at 632.[7]
            
III. Analysis
            
A. Injection Well Act
            
In 1961, the 
Legislature enacted the Injection Well Act (the Act), which governs the 
permitting process for all injection wells in the state.[8] The Act—currently codified in Chapter 27 
of the Water Code—distinguishes between two types of injection wells, those used 
to dispose of “industrial and municipal waste,” and those used to dispose of 
“oil and gas waste.” Tex. Water 
Code § 27.002(5)–(6). Under the Act, the Commission has 
jurisdiction over injection wells used to dispose of oil and gas waste, 
see id. §§ 27.031, 27.051(b), while the Texas 
Commission for Environmental Quality (TCEQ) has jurisdiction over other types of 
injection wells, including those used for the disposal of industrial and 
municipal waste, see id. §§ 27.011, 
27.051(a).
            
The distinction between the jurisdictions of these two agencies is 
important because the statute governing the issuance of permits differs as to 
factors each agency must consider in granting a permit. Both statutes require 
the agencies to determine “that the use or installation of the injection well is 
in the public interest,” id. § 27.051(a)(1), (b)(1), but the TCEQ is 
additionally required to find that an applicant for a hazardous waste well not 
located in an industrial area has made reasonable effort to ensure that any 
burden of the proposed injection well on public roadways will be minimized or 
mitigated, id. § 27.051(a)(6).[9] The statute does not require the 
Commission to make this public roadway determination. Originally, the Act 
required both agencies to consider the same factors in determining whether to 
issue a permit, but a 1987 amendment added the public roadway requirement for 
the TCEQ’s consideration in certain situations but did not enact a similar 
requirement for the Commission.[10]
            
The Act further requires the TCEQ to consider specific criteria—including 
the compliance history of the applicant, whether an alternative to the well is 
reasonably available, and, in some circumstances, whether the applicant will 
maintain sufficient insurance—in its public interest inquiry, though the Act 
specifically states the TCEQ is not limited to consideration of these 
factors.
 Id. § 27.051(d).[11] The Act provides no parallel provision 
enumerating the types of public interest considerations the Commission must 
evaluate.
            
The Act declares a purpose of protecting freshwater supplies in this 
state, as provided in its statement of policy and purpose:
It is the policy of this state and the purpose of this 
chapter to maintain the quality of fresh water in the state to the extent 
consistent with the public health and welfare and the operation of existing 
industries, taking into consideration the economic development of the state, to 
prevent underground injection that may pollute fresh water, and to require the 
use of all reasonable methods to implement this policy.
 
Id. 
§ 
27.003.
            
Beyond this statement of purpose, the Act, as a whole, details procedures 
related to the protection of natural resources, as well as the technical 
processes involved, in the permitting of an injection well. The chapter 
prescribes no requirements for the Commission to engage in any sort of process 
or deliberation involving matters that do not involve oil and gas production and 
the protection of natural resources.
            
With this statutory framework in mind, we turn to the Commission’s 
construction of “public interest” to determine if it is reasonable and in 
harmony with the language of the statute.
            
B. The Commission’s Interpretation of “Public Interest”
            
Texas Citizens argues, and the court of appeals held, that “public 
interest” is a broad term, intended by the Legislature to encompass any number 
of subsidiary issues that might impact the public interest. Texas Citizens 
asserts two primary arguments in favor of its interpretation: (1) the term is 
inherently an amorphous, unlimited term, encompassing all possible factors that 
might affect the public; and (2) since other factors in section 27.051(b) 
require the Commission to consider matters pertaining to the production of oil 
and gas and the prevention of fresh water pollution, it must follow that the 
“public interest” factor is intended to encompass something 
else.
            
Both of these arguments are at least somewhat reasonable, though both 
have flaws. An argument can be asserted—as Pioneer does—that sections 
27.051(b)(2) and (3) specifically address the need to 
produce oil and gas in a manner that does not harm oil, gas, and mineral 
reserves and protects fresh water supplies, while the public interest factor 
contemplates whether the proposed well will ultimately positively impact the 
production of oil and gas. The “amorphousness” of the phrase “public interest” 
further cuts against Texas Citizens’ argument that its interpretation is the 
only reasonable interpretation of the provision—the statute is, as this dispute 
demonstrates, subject to more than one interpretation. The greater deficit in 
Texas Citizens’ arguments, though, is that while Texas Citizens’ position has 
some merit, the Commission’s interpretation does too.
            
It is precisely when a statutory term is subject to multiple 
understandings that we should defer to an agency’s reasonable interpretation. 
See Fiess, 202 S.W.3d at 
747–48. Because we only require an agency’s interpretation of a 
statute it is charged with administering to be reasonable and in accord with the 
statute’s plain language, we need not consider whether the Commission’s 
construction is the only—or the best—interpretation in order to warrant our 
deference. In determining whether the Commission’s interpretation is reasonable, 
we begin with the language in the statute itself.
            
1. Statutory Scheme
            
The term “public interest” in section 27.051(b)(1) is undefined. We ordinarily construe a statute so as to 
give effect to the Legislature’s intent as expressed in its plain language. 
Duenez, 237 S.W.3d 680 at 
683. “‘If the statute is clear and unambiguous, we must apply its words 
according to their common meaning.’” First Am. Title Ins. Co., 258 S.W.3d 
at 631 (quoting State v. Shumake, 199 S.W.3d 
279, 284 (Tex. 2006)).
            
As discussed above, the phrase “public interest” is anything but clear 
and unambiguous. There are several factors, however, lending support to the 
Commission’s determination that its consideration of the public interest is 
intended to be a narrow one precluding consideration of traffic-safety 
concerns.
            
First, the Legislature’s addition of a traffic-related inquiry to the 
TCEQ’s required findings—amended more than twenty-five years after the Act was 
initially enacted—weighs in favor of the Commission’s interpretation. We 
generally avoid construing individual provisions of a statute in isolation from 
the statute as a whole. See City of San Antonio v. City of 
Boerne, 111 S.W.3d 22, 25 (Tex. 2003). We therefore “‘read the 
statute as a whole and interpret it to give effect to every part.’” Id. 
(quoting Jones v. Fowler, 969 S.W.2d 429, 432 (Tex. 1998) (per curiam)). When the Legislature uses a word or phrase in one 
portion of a statute but excludes it from another, the term should not be 
implied where it has been excluded. Laidlaw Waste 
Sys. (Dallas), Inc. v. City of Wilmer, 904 S.W.2d 656, 659 
(Tex. 1995).[12] Had the Legislature intended for the 
Commission and the TCEQ to entertain traffic-related evidence in their public 
interest inquiries, it would not have needed to amend the statute to expressly 
require the TCEQ to consider a well’s impact on traffic in certain situations. 
See Acker v. Tex. Water Comm’n, 790 S.W.2d 299, 
301 (Tex. 1990) (“A statute is presumed to have been enacted by the legislature 
with complete knowledge of the existing law and with reference to it.”); see also Leland v. Brandal, 257 S.W.3d 204, 208 (Tex. 2008).[13]
            
Second, under the principle of ejusdem generis, we have warned against 
expansively interpreting broad language where it is immediately preceded by 
narrow and specific terms. Marks v. St. Luke’s 
Episcopal Hosp., 319 S.W.3d 658, 663 (Tex. 2010). “[W]hen words of 
a general nature are used in connection with the designation of particular 
objects or classes of persons or things, the meaning of the general words will 
be restricted to the particular designation.” Hilco Elec. Coop. v. 
Midlothian Butane Gas Co., 111 S.W.3d 75, 81 (Tex. 2003). Given that 
the surrounding statutory scheme—including the other three factors the 
Commission is specifically required to consider in evaluating a permit 
application—exclusively concern matters related to the production of oil and 
gas, it is reasonable for the Commission to decline to consider the completely 
unrelated inquiry of traffic safety in weighing the public 
interest.
            
Third, the Act’s statement of purpose expressly declares the purpose of 
the Act is to “maintain the quality of fresh water in the state to the extent 
consistent with the public health and welfare and the operation of existing 
industries.” Tex. Water Code § 
27.003. This narrow policy statement declines to promote a 
purpose of protecting public safety except where natural resources are 
concerned.
            
Finally, in the portions of the Act where the Legislature intends for the 
TCEQ or the Commission to evaluate a particular factor in considering the public 
interest, it says so. The Legislature requires the TCEQ to examine specific 
factors in its public interest inquiry. See id. § 
27.051(d). Texas Citizens argues that section 27.051(d) does not limit 
the TCEQ’s consideration of these factors in its public interest investigation. 
See id. (providing that the TCEQ “shall not be 
limited to the consideration of” the enumerated public interest factors). But 
the Legislature does not require the TCEQ to consider any particular additional 
factor either. Id. In contrast, there is no statutory directive for the 
Commission to consider matters related to traffic safety or any other specific 
factor in its public interest evaluation.
            
When, as here, a statutory scheme is subject to multiple interpretations, 
we must uphold the enforcing agency’s construction if it is reasonable and in 
harmony with the statute. See First Am. Title Ins. Co., 258 S.W.3d at 632. As the Supreme Court has explained, 
governmental agencies have a “unique understanding” of the statutes they 
administer. Wyeth v. Levine, 129 S. Ct. 1187, 1201 (2009) (citing 
Hines v. Davidowitz, 312 U.S. 52, 67 (1941)). 
In a complex regulatory scheme like the Act and with a phrase as amorphous as 
“public interest,” this deference is particularly important. See Pub. Util. Comm’n of Tex. v. Tex. Tel. Ass’n., 163 S.W.3d 204, 213 
(Tex. App.—Austin 2005, no pet.) (“Public interest 
determinations are dependent upon the special knowledge and expertise of the 
[Public Utility] Commission.”). Under the plain terms of the Act, we conclude 
the Commission’s construction of “public interest” as a narrow term that does 
not include traffic-safety considerations is reasonable and in alignment with 
the statute’s meaning.
            
2. The Commission’s Area of Expertise
            
Texas 
Citizens argues that we should afford no deference to an agency’s interpretation 
of a statute that does not lie within its administrative expertise or pertain to 
a nontechnical issue of law. See Rylander v. Fisher 
Controls Int’l, Inc., 45 S.W.3d 291, 302 (Tex. App.—Austin 2001, no pet.). 
Texas Citizens further contends that requiring the Commission to consider 
traffic-safety evidence in its public interest evaluation does not impose on it 
a duty to “regulate truck traffic” or otherwise evaluate matters beyond its 
expertise, but rather to simply consider whether traffic-safety concerns might 
cut against the propriety of the proposed well. The Commission could, Texas 
Citizens argues, limit the amount of waste the injection well can accept or 
regulate hours of operation, thus curtailing potential truck traffic, without 
having to regulate or make policy decisions impacting the state’s roads. The 
Commission counters that its statutory directive is to regulate matters related 
to oil and gas production, not traffic concerns, and that it does not have the 
expertise or jurisdiction to consider these sorts of public-safety 
issues.
            
As an initial matter, the breadth of the term “public interest” is a 
question of law that implicates the Commission’s very technical decision of 
whether to grant an injection well permit. But, more importantly, we disagree 
with Texas Citizens that the Commission’s public interest inquiry is unrelated 
to its administrative expertise: to the contrary, the Commission interpreted the 
public interest finding in such a way as to ensure that it will only 
consider matters within its expertise. As we concluded above, the Commission’s 
determination that “public interest” does not include traffic-safety matters is 
reasonable under the Act’s statutory scheme. We further conclude it is 
reasonable given the Commission’s unique competence as the state’s agency 
overseeing oil and gas production.
            
The Commission has long been the agency charged with regulating matters 
related to oil and gas production, and is given broad discretion in its 
administration of oil and gas laws. See Tex. Nat. Res. Code § 85.202(b) 
(requiring the Commission to “do all things necessary for the conservation of 
oil and gas and prevention of waste of oil and gas”); R.R. Comm’n of Tex. v. Lone Star Gas Co., 844 S.W.2d 679, 686 
(Tex. 1992) (acknowledging the Legislature’s grant of “broad discretion to the 
Commission in administering the laws regulating oil and natural gas”); 
Stewart v. Humble Oil & Ref. Co., 377 S.W.2d 830, 834 (Tex. 1964) 
(“[T]he courts have consistently recognized that the Commission must be given 
discretion in administering the oil and gas statutes.”). Among other matters 
related to oil and gas production, the Legislature charges the Commission with 
making and enforcing “rules and orders for the conservation of oil and gas and 
prevention of waste of oil and gas.” Tex. Nat. Res. Code § 85.201.[14]
            
As the Commission argues, nothing in any of the Commission’s enabling 
acts grants the Commission authority over matters related to traffic safety. 
Rather, each of these statutory provisions make clear 
that the Commission is the agency charged with administering laws related to oil 
and gas production. See R.R. Comm’n v. 
Sterling Oil & Ref. Co., 218 S.W.2d 415, 418 (Tex. 1949) (“The 
Legislature realized the great value of oil and gas and the importance of the 
task and duty placed on the Railroad Commission to conserve same for the use of 
the public, and by many provisions of the statutes full power is given the 
Railroad Commission to prevent the waste of oil and gas.”). Further, it is 
“utterly impossible for the Legislature to meet the demands of every detail in 
the enactment of laws relating to the production of oil and gas . . . . The 
Legislature . . . has authorized the Railroad Commission to handle the details 
relating to the preservation and conservation of the natural resources of the 
State.” Corzelius v. Harrell, 186 S.W.2d 961, 964 
(Tex. 1945). The Commission must have discretion in 
determining the minutiae of its statutory mandates.
            
Here, Texas Citizens raised arguments concerning the impact of large 
trucks on dirt roads, inadequate road width to handle truck traffic, and safety 
concerns related to the truck traffic. Given the Commission’s institutional 
focus on matters concerning oil and gas production, it is reasonable for the 
Commission to decline to consider matters beyond its administrative expertise. 
This is especially the case given the limitless number of factors the Commission 
may need to consider in evaluating an injection well permit if the Commission is 
required to study any potential subsidiary matter bearing on the public 
interest, such as truck traffic in this case. As Texas Citizens conceded at oral 
argument, it does not merely want for the Commission to examine matters related 
to truck traffic, but rather any factor that might conceivably touch on a broad 
definition of “public interest.” In opposition to an injection well, a creative 
opponent could assert any number of concerns impacting the public interest 
entirely unrelated to the Commission’s express legislative directives. Under 
Texas Citizens and the court of appeals’ approach, the Commission would have to 
consider and weigh a limitless number of factors beyond the Commission’s 
institutional competence.[15]
            
The Commission’s purpose is to “do all things necessary for the 
conservation of oil and gas and prevention of waste of oil and gas.” Tex. Nat. Res. Code § 85.202(b). As the agency 
charged with administering the state’s oil and gas laws, it is reasonable for 
the Commission to refuse to consider traffic-safety evidence in its public 
interest analysis.[16]
            
3. Commission Practice in Weighing the “Public 
Interest”
            
The 
Commission finally argues that in the half-century since the Legislature first 
promulgated the requirement that it weigh the public interest in evaluating an 
injection well permit, it has never considered traffic-safety concerns. The 
Commission urges that its long-standing construction of the term “public 
interest” is especially entitled to judicial deference. Citing an Amarillo Court 
of Appeals’ opinion, Texas Citizens counters that, at least on one occasion, the 
Commission did, in fact, consider traffic-safety evidence. The Amarillo Court of 
Appeals’ decision, however, does not support Texas Citizens’ assertion. In that 
case, as in the instant dispute, property owners protested a proposed injection 
well in a contested hearing before the Commission, arguing that the well would 
not comport with the public interest because of public-safety concerns. Berkley v. R.R. Comm’n of Tex., 282 
S.W.3d 240, 244 (Tex. App.—Amarillo 2009, no pet.). Following the Austin 
Court of Appeals’ holding in the instant case, the Amarillo Court of Appeals 
explained that safety concerns “are indicia that should be considered by the 
Commission when assessing public interests.” Id. In Berkley, 
however, there is no indication the Commission considered traffic-safety 
evidence in its decision; instead, the Commission found the proposed injection 
well would serve the public interest for similar reasons as those articulated in 
the order here. Id.[17]
            
We agree with the Commission that an agency’s long-standing construction 
of a statute, especially in light of subsequent legislative amendments, is 
particularly worthy of our deference. See Stanford v. Butler, 181 S.W.2d 
269, 273 (Tex. 1944) (explaining that an agency’s construction of a statute it 
is charged with enforcing is “worthy of serious consideration as an aid to 
interpretation, particularly where such construction has been sanctioned by long 
acquiescence”) (citations omitted); see also Pub. Util. 
Comm’n of Tex. v. City Pub. Serv. Bd. of San 
Antonio, 53 S.W.3d 310, 324 (Tex. 2001).[18] The Commission has declined to consider 
public-safety evidence in its public interest analysis for almost fifty years, 
and Texas Citizens provides no authority to the contrary. Had the Legislature 
disagreed with the Commission’s construction of “public interest,” it could have 
amended the Act to require the Commission to take a broader view of the term. 
See Stanford, 181 S.W.2d at 273–74. We will not 
judicially amend the Act in the manner Texas Citizens 
proposes.
                
IV. 
Conclusion
            
The court of 
appeals failed to grant deference to the Commission’s interpretation of “public 
interest” in section 27.051(b)(1) of the Water Code and 
instead held the Commission abused its discretion in its construction of the 
statute. Because we conclude the Commission’s interpretation of the phrase 
“public interest” is reasonable and in accord with the plain meaning of the 
statute, we hold the court of appeals erred in refusing to defer to the 
Commission’s construction of the term.
            
Accordingly, 
we reverse the court of appeals’ judgment and render judgment for the Commission 
and Pioneer in accordance with the trial court’s original 
judgment.
                                                                                    

 
 
 
                                                                                                                                                
            
__________________________________
                                                                                                                                                            
Eva M. Guzman
                                                                                                                                                            
Justice
                                                                                                

 
OPINION DELIVERED: March 11, 2011







[1] The 
Water Code defines “injection well” as “an artificial excavation or opening in 
the ground made by digging, boring, drilling, jetting, driving, or some other 
method, and used to inject, transmit, or dispose of industrial and municipal 
waste or oil and gas waste into a subsurface stratum; or a well initially 
drilled to produce oil and gas which is used to transmit, inject, or dispose of 
industrial and municipal waste or oil and gas waste into a subsurface stratum; 
or a well used for the injection of any other fluid; but the term does not 
include any surface pit, surface excavation, or natural depression used to 
dispose of industrial and municipal waste or oil and gas waste.” Tex. Water Code § 27.002(11).

[2] Texas 
Citizens presented evidence that (1) the small country gravel roads leading to 
the well are too narrow (about sixteen feet wide) for large truck traffic, (2) 
the trucks would damage the roads, and (3) the trucks would pose a safety threat 
to children and other pedestrians who frequently use the roads. The evidence at 
the hearing demonstrated that up to fifty trucks per day could travel the roads 
at all hours of the day and night.

[3] In 
their findings of fact and conclusions of law, the hearing examiners also 
addressed the other statutory findings required for the Commission’s grant of a 
permit, finding Pioneer had posted required financial assurance, and concluding 
that the proposed injection well would not endanger oil, gas, or geothermal 
resources or cause pollution of surface or fresh water. See id. § 27.051(b)(2)–(4).

[4] Texas 
Citizens also raised procedural due process and notice arguments in the court of 
appeals. The court of appeals affirmed the Commission’s order on both of these 
grounds. Texas Citizens does not appeal these rulings to this Court.

[5] Pioneer 
also argues that the Court must defer to the Commission’s reasonable 
interpretation of the statute. However, Pioneer primarily contends that, under 
the substantial evidence rule, the Commission did not abuse its discretion 
because substantial evidence in the record supported the Commission’s ruling and 
the ruling comports with the law. See Tex. Gov’t Code § 2001.174.

[6] See, 
e.g., First Am. Title Ins. Co., 258 S.W.3d at 632 (explaining that we 
give “serious consideration” to an agency’s construction of its statute and 
should uphold the agency’s interpretation, so long as it is reasonable and does 
not contradict the statute’s plain language); Mid-Century Ins. Co. v. Ademaj, 243 S.W.3d 618, 623 (Tex. 2007) (observing that 
an agency’s construction of a statute it is charged with enforcing is entitled 
to serious consideration, as long as the construction is reasonable and does not 
contradict the statute’s plain language); Fiess v. State Farm Lloyds, 202 S.W.3d 744, 
747–48 (Tex. 2006) (recognizing that courts give “some deference” to an agency 
regulation—including an agency’s formal opinion adopted after a formal 
proceeding—concerning a statute, so long as the language at issue is ambiguous 
and the agency’s construction reasonable); TXU Elec. Co. v. Pub. Util. Comm’n of Tex., 51 S.W.3d 275, 286 (Tex. 2001) 
(concluding that the Court gives “some deference” to the Public Utility 
Commission’s interpretation of a statute if it is reasonable and does not 
conflict with the statute’s language); Quick v. City of Austin, 7 S.W.3d 
109, 123 (Tex. 1998) (noting that the contemporaneous construction of a statute 
by a governmental agency charged with its enforcement is entitled to “great 
weight”); Dodd v. Meno, 870 S.W.2d 4, 7 
(Tex. 1994) (recognizing that an administrative agency’s construction of a 
statute that it is charged with enforcing is entitled to “serious 
consideration,” so long as the construction is reasonable and does not 
contradict the statute’s plain language); Tarrant Appraisal Dist. v. 
Moore, 845 S.W.2d 820, 823 (Tex. 1993) (same); Tex. Emp’rs Ins. Ass’n v. Holmes, 
196 S.W.2d 390, 395 (Tex. 1946) (observing that “‘the practical interpretation 
of [an] Act by the agency charged with the duty of administering it is entitled 
to the highest respect from the courts’”) (quoting Indus. Accident Bd. v. 
Glenn, 190 S.W.2d 805, 809 (Tex. 1945) (Simpson, J., dissenting)); 
Stanford v. Butler, 181 S.W.2d 269, 273 (Tex. 1944) (observing 
that courts will ordinarily adopt and uphold a construction of a statute by the 
executive officer or department charged with its administration, if the statute 
is ambiguous and the construction reasonable).

[7] Because 
we evaluate the contours of “public interest” as made in formal Commission 
statements following an adjudication, we need not 
determine whether some lesser level of deference would be warranted if the 
statements were made informally, as expressed in Skidmore. See 
Skidmore, 323 U.S. at 139–40.

[8] See 
Act of April 5, 1961, 57th Leg., R.S., ch. 82, 
1961 Tex. Gen. Laws 159.

[9] 
Specifically, the TCEQ is required to make the following findings in 
granting an injection well permit:
 
(1) that the use or installation of the injection well is in the 
public interest;
 
(2) that no existing rights, including, but not limited to, 
mineral rights, will be impaired;
 
(3) that, with proper safeguards, both ground and surface fresh 
water can be adequately protected from pollution;
 
(4) that the applicant has made a satisfactory showing of 
financial responsibility if required by Section 27.073 of this code;
 
(5) that the applicant has provided for the proper operation of 
the proposed hazardous waste injection well;
 
(6) that the 
applicant for a hazardous waste injection well not located in an area of 
industrial land use has made a reasonable effort to ensure that the burden, if 
any, imposed by the proposed hazardous waste injection well on local law 
enforcement, emergency medical or fire-fighting personnel, or public roadways, 
will be reasonably minimized or mitigated; and
 
(7) that the 
applicant owns or has made a good faith claim to, or has the consent of the 
owner to utilize, or has an option to acquire, or has the authority to acquire 
through eminent domain, the property or portions of the property where the 
hazardous waste injection well will be constructed.
 
Id. § 27.051(a).

[10] See 
Act of June 1, 1987, 70th Leg., R.S., ch. 638, § 
5, 1987 Tex. Gen. Laws 2433, 2434.

[11] Texas 
Water Code § 27.051(d) provides:
 
The [TCEQ], 
in determining if the use or installation of an injection well is in the public 
interest under Subsection (a)(1), shall consider, but shall not be limited to 
the consideration of:
 
(1) 
compliance history of the applicant and related entities under the method for 
evaluating compliance history developed by the [TCEQ] under Section 5.754 and in 
accordance with the provisions of Subsection (e);
 
(2) 
whether there is a practical, economic, and feasible 
alternative to an injection well reasonably available; and
 
(3) if 
the injection well will be used for the disposal of hazardous waste, whether the 
applicant will maintain sufficient public liability insurance for bodily injury 
and property damage to third parties that is caused by sudden and non-sudden 
accidents or will otherwise demonstrate financial responsibility in a manner 
adopted by the [TCEQ] in lieu of public liability insurance. A liability 
insurance policy which satisfies the policy limits required by the hazardous 
waste management regulations of the [TCEQ] for the applicant's proposed 
pre-injection facilities shall be deemed “sufficient” under this subdivision if 
the policy:
 
                                                                
 (A) covers the injection well; and
 
(B) 
is issued by a company that is authorized to do 
business and to write that kind of insurance in this state and is solvent and 
not currently under supervision or in conservatorship or receivership in this 
state or any other state.
Id.
 
 

[12] See 
also Fireman’s Fund Cnty. Mut. Ins. Co. v. Hidi, 13 S.W.3d 767, 769 (Tex. 2000) (per curiam) (“When the Legislature has employed a term in one 
section of a statute and excluded it in another, we presume that the Legislature 
had a reason for excluding it.”); Shumake, 199 
S.W.3d at 287 (observing statutory construction rule of giving effect to all 
words and not treating any statutory language as surplusage).

[13] Chief Justice Jefferson would hold that 
the term “public interest” unambiguously precludes the Commission from 
considering traffic-safety factors because of the TCEQ’s separate statutory duty 
to consider those factors in certain situations. We do not agree that the 
content or legislative history of these extrinsic provisions renders the term 
“public interest” unambiguous as to the Commission. As we have previously 
stated, we apply an unambiguous statutory term according to its common 
meaning. First Am. Title Ins. Co., 258 S.W.3d at 
631. Here, we cannot interpret “public interest” according to its common 
meaning because it is ambiguous—instead, we must look to the statutory 
scheme of Chapter 27 and other extrinsic interpretative aids to determine the 
meaning of the term.

[14] See 
also id. § 85.202(b) (“The commission shall do all things necessary for the 
conservation of oil and gas and prevention of waste of oil and gas and may adopt 
other rules and orders as may be necessary for those purposes.”); § 86.041 (“The 
commission has broad discretion in administering the provisions of this chapter 
and may adopt any rule or order in the manner provided by law that it finds 
necessary to effectuate the provisions and purposes of this 
chapter.”).

[15] As 
Justice Pemberton noted in his concurrence to the denial of en banc review in 
the court of appeals, there is a “virtually infinite range of considerations” 
that could bear upon the public interest inquiry. 254 
S.W.3d at 503 (Pemberton, J., concurring in denial of reconsideration en 
banc). In his concurrence to the denial of en banc review, Justice 
Waldrop also opined that the term public interest “could well have been intended 
to be broad enough to allow the Commission to address the myriad possible 
circumstances that might be presented in an injection well permit application.” 
Id. at 507 (Waldrop, J., concurring in denial of 
reconsideration en banc). Nonetheless, both justices ultimately concluded 
the statutory scheme did not demonstrate a legislative intent to limit the 
Commission’s statutory authority or jurisdiction so as to preclude its 
consideration of traffic-safety issues.

[16] We 
note that the Legislature has granted other entities express statutory authority 
over the regulation of traffic-related concerns. See, 
e.g., Tex. Transp. Code § 251.151 (granting 
county commissioners court the authority to “regulate traffic on a county road 
or on real property owned by the county that is under the jurisdiction of the 
commissioners court”); § 311.001 (granting home-rule municipality control over 
public highways, streets, and alleys of the municipality). We need not consider 
the potential intersection of another entity’s regulation of traffic-safety 
issues with the Commission’s grant of an injection well permit as that issue is 
not before us.

[17] The 
Berkley decision was also rendered more than a year after the court of 
appeals’ decision in this case, so it is possible that, even if the Commission 
did weigh public-safety factors, it was doing so as required by the Austin Court 
of Appeals’ holding.

[18] 
Because the Commission has long interpreted the public interest finding 
to not include traffic-safety issues, we need not consider the manner in which 
the Commission can potentially later revise its interpretation.